# DALZELL v. DUEBER WATCH CASE MANUFACTURING COMPANY.

## SAME v. SAME.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

Nos. 213, 214.   Argued April 18, 19, 1893. — Decided May 10, 1893.

An oral agreement for the sale and assignment of the right to obtain a patent for an invention is not within the statute of frauds; nor within section 4898 of the Revised Statutes requiring assignments of patents to be in writing ; and may be specifically enforced in equity, upon sufficient proof thereof.

A manufacturing corporation, which has employed a skilled workman, for a stated compensation, to take charge of its works, and to devote his time and services to devising and making improvements in articles there manufactured, is not entitled to a conveyance of patents obtained for inventions made by him while so employed, in the absence of express agreement to that effect.

Specific performance will not be decreed in equity, without clear and satisfactory proof of the contract set forth in the bill.

Where, at the hearing in equity upon a plea and a general replication, the plea, as pleaded, is not supported by the testimony, it must be overruled, and the defendant ordered to answer the bill.

THESE were two bills in equity, heard together in the Circuit Court, and argued together in this court.

On March 31, 1886, Allen C. Dalzell, a citizen of the State of New York, and the Fahys Watch Case Company, a New York corporation, filed a bill in equity against the Dueber Watch Case Manufacturing Company, a corporation of Ohio, for the infringement of two patents for improvements in apparatus for making cores for watch cases, granted to Dalzell, October 27, 1885, for the term of which he had, on January 21, 1886, granted a license, exclusive for three years, to the Fahys Company.

To that bill the Dueber Company, on June 4, 1886, filed the following plea: "That prior to the grant of the said

letters patent upon which the bill of complaint is based, and prior to the application therefor, and prior to any alleged invention by said Dalzell of any part, feature or combination described, shown or claimed in either of said letters patent, the said defendant, being then engaged in the manufacture of watch cases in the city of Newport in the State of Kentucky, and the said Dalzell having been in its employ as a tool-maker for a year preceding, it, said defendant, at the request of said Dalzell, reëmployed said Dalzell at increased wages to aid in experimenting upon inventions upon machinery and tools to be used in the manufacture of various portions of watch cases; that said Dalzell did then and there agree with said defendant, in consideration of said increased salary as aforesaid to be paid to him, and which was paid to him by this defendant, to dedicate his best efforts, skill and inventive talent and genius towards the perfecting and improvement of watch-case machinery and such other devices as this defendant should direct and order, and in experimenting under the direction of this defendant for this purpose, and further agreed that any inventions or improvements made or contributed to by him, said Dalzell, should be patented at the expense of this defendant, and for its benefit exclusively, and that said Dalzell should execute proper deeds of assignment, at the expense of this defendant, to be lodged with the applications for all such patents in the United States Patent Office, and said patents were to be granted and issued directly to this defendant; that, in pursuance of said agreement, said Dalzell entered upon said employment, and while thus employed at the factory of this defendant, and while using its tools and materials, and receiving such increased wages from it, as aforesaid, the said alleged inventions were made; that said patents were applied for, with the permission of this defendant, by the said Dalzell; and that all fees and expenses of every kind, necessary or useful for obtaining said patents, including as well Patent Office fees, as fees paid the solicitor employed to attend to the work incident to the procuring of said patents and drawing said assignments to this defendant, were paid by this defendant; and that, notwithstanding the foregoing, said Dalzell did

not sign the said deeds, although he had promised so to do, but fraudulently and secretly procured the said patents to be granted to himself; of all of which this defendant avers the complainant the Fahys Watch Case Company had notice, at and prior to the alleged making of the license by said Dalzell to it, more particularly referred to in the bill of complaint; and defendant avers that by reason of the premises the title in equity to said patents is in this defendant."

The plea, as required by Equity Rule 31 of this court, was upon a certificate of counsel that in his opinion it was well founded in point of law; and was supported by the affidavit of John C. Dueber, that he was the president of the Dueber Company, that the plea was not interposed for delay, and that it was true in point of fact.

After a general replication had been filed and some proofs taken in that case, including depositions of Dueber and of Dalzell, the Dueber Company, on January 17, 1887, filed a bill in equity against Dalzell and the Fahys Company, for the specific performance of an oral contract of Dalzell to assign to the Dueber Company the rights to obtain patents for his inventions, and for an injunction against Dalzell and the Fahys Company, and for further relief.

This bill contained the following allegations:

"That heretofore, to wit, prior to November 1, 1884, the said defendant Dalzell was in the employment of your orator, making and devising tools to be used in the construction of watch cases; that on or about said last-mentioned date, at the request of said Dalzell, his wages were raised, in consideration of a promise then made by said Dalzell to your orator that in the future his services would be of great value in the devising and perfecting of such tools; that, in pursuance of said promise and contract, the said Dalzell continued in the employ of your orator, and wholly at its expense, to devise and construct various tools to be used in your orator's watch-case factory in the manufacture of various parts of watch cases; that said Dalzell was so employed for a great length of time, to wit, a whole year, a large part of which time he was assisted by various workmen employed and paid by your orator to assist

him, the said Dalzell, in constructing such tools and in the experiments incident thereto."

"That subsequently thereto, and when said tools were completed, said Dalzell requested your orator to apply for letters patent for the various inventions embodied in all of said tools, for the use and benefit of your orator, representing to your orator that he, said Dalzell, had made valuable discoveries and inventions while engaged in designing and constructing said tools, and further representing that, if your orator did not secure the exclusive right to said inventions by letters patent, in all probability some of the workmen employed at your orator's factory, who were familiar with the said inventions and the construction of said tools, might go to some other and rival watch-case company, and explain to it the construction of such tools, and make similar tools for such other company, in which case your orator would be without remedy."

"That said Dalzell then and there, and as a further inducement to your orator to have letters patent applied for for said inventions, voluntarily offered to your orator that, if your orator should permit him, Dalzell, to apply for letters patent, and your orator pay all the expenses incident to obtaining such letters patent, such letters patent might be taken for the benefit of your orator, and that he, Dalzell, would not ask or require any further or other consideration for said inventions and such letters patent as might be granted thereon, which proposition was then and there accepted by your orator, and it was then fully agreed between said parties that said Dalzell should immediately proceed, through a solicitor of his own selection, to procure said patents for and in the name of your orator, and that your orator should pay all bills that might be presented by said Dalzell or such solicitor as might be selected to attend to the business of procuring said patents."

This bill further alleged that Dalzell did, in pursuance of that agreement, select a solicitor and apply for the two patents mentioned in the bill for an infringement, and three other patents; that, when some of the patents had "passed for issue," the solicitor employed by Dalzell sent blank assignments thereof to the Dueber Company with a request that

Dalzell sign them, and thus transfer the legal title in the inventions to the Dueber Company, and enable the patents to be granted directly to it; that it exhibited these assignments to Dalzell, and requested him to sign them; that Dalzell replied that he would postpone signing them until all the patents had "passed for issue," and would then sign all together, to all which the Dueber Company assented; that the Dueber Company paid all the fees and expenses necessary or useful in obtaining the patents; but that Dalzell fraudulently procured the patents to be granted to himself, and refused to assign them to the Dueber Company, and, as that company was informed and believed, conveyed, with the intention of defrauding it, certain interests in and licenses under the patents to the Fahys Company, with knowledge of the facts; and that Dalzell and the Fahys Company confederated and conspired to cheat and defraud the Dueber Company out of the patents, and, in pursuance of their conspiracy, filed their bill aforesaid against the Dueber Company.

Annexed to this bill was an affidavit of Dueber that he had read it and knew the contents thereof, and that the same was true of his own knowledge, except as to the matters therein stated on information and belief, and that as to those matters he believed it to be true.

To this bill answers were filed by Dalzell and the Fahys Company, denying the material allegations; and a general replication was filed to these answers.

By stipulation of the parties, the evidence taken in each case was used in both. After a hearing on pleadings and proofs, the Circuit Court dismissed the bill of Dalzell and the Fahys Company; and entered a decree against them, as prayed for, upon the bill of the Dueber Company. 38 Fed. Rep. 597. Dalzell and the Fahys Company appealed from each decree.

*Mr. J. E. Bowman* and *Mr. Edmund Wetmore* for appellants.

*Mr. Jan    oore* for appellee.

MR. JUSTICE GRAY, after stating the substance of the pleadings and decrees, delivered the opinion of the court.

The more important of these cases, and the first to be considered, is the bill in equity of the Dueber Watch Case Manufacturing Company to compel specific performance by Dalzell of an oral agreement, alleged to have been made by him while in its employment, to assign to it the right to obtain patents for his inventions in tools for making parts of watch cases.

An oral agreement for the sale and assignment of the right to obtain a patent for an invention is not within the statute of frauds, nor within section 4898 of the Revised Statutes requiring assignments of patents to be in writing; and may be specifically enforced in equity, upon sufficient proof thereof. *Somerby* v. *Buntin,* 118 Mass. 279 ; *Gould* v. *Banks,* 8 Wend. 562 ; *Burr* v. *De la Vergne,* 102 N. Y. 415 ; *Blakeney* v. *Goode,* 30 Ohio St. 350.

But a manufacturing corporation, which has employed a skilled workman, for a stated compensation, to take charge of its works, and to devote his time and services to devising and making improvements in articles there manufactured, is not entitled to a conveyance of patents obtained for inventions made by him while so employed, in the absence of express agreement to that effect. *Hapgood* v. *Hewitt,* 119 U. S. 226.

Upon the question whether such a contract was ever made by Dalzell, as is alleged in the bill of the Dueber Company, the testimony of Dalzell and of Dueber, the president and principal stockholder of the Dueber Company, is in irreconcilable conflict.

Dalzell was a skilled workman in the manufacture of various parts of watch cases, and was employed by the Dueber Company, first for eight months as electroplater and gilder, and then for a year in its tool factory, at wages of twenty-five dollars a week, from February, 1883, until November, 1884, and thenceforth at wages of thirty dollars a week, until January 19, 1886, when he left their employment, and immediately entered the employment of the Fahys Company, and executed to that company a license to use his patents.

The matters principally relied on by the Dueber Company, as proving the contract sought to be enforced, are a conversation between Dalzell and Dueber at the time of raising his wages in November, 1884; another conversation between them in the spring of 1885; and oral promises said to have been made by Dalzell in the summer of 1885, to assign to the Dueber Company his rights to obtain patents. It will be convenient to consider these matters successively.

The bill alleges that Dalzell's wages were raised in November, 1884, at his request, "and in consideration of a promise then made by said Dalzell to " the Dueber Company "that in the future his services would be of great value in the devising and perfecting of such tools," and that, " in pursuance of said promise and contract," Dalzell continued in the company's employ, at its expense, and with the assistance of its workmen, to devise and construct such tools.

Dueber's whole testimony on this point appears in the following question and answer: " Qu. Please state the circumstances which induced your company to increase Mr. Dalzell's wages at the time they were increased. Ans. Mr. Dalzell came to me in the office, and he says, 'Mr. Dueber, a year is now up since I worked for you in this factory. I suppose you are satisfied with the improvements I have made, and I have come to have my wages raised, and I will show you that, if you raise my wages, the improvements I will make this year will justify you in doing so.' I asked him what wages he wanted; he said 'thirty dollars per week,' and he was paid that until the time he left. When that year was up, nothing was said about wages."

This testimony tends to show no more than that Dalzell expressed a confident belief that, if his wages should be raised, the improvements which he would make during the coming year would justify the increase. It has no tendency to prove any such promise or contract as alleged in the bill, or any other promise or contract on Dalzell's part. So far, therefore, no contract is proved, even if full credit is given to Dueber's testimony.

As to what took place in the spring of 1885, the bill alleges

that, subsequently to the aforesaid interview, " and when said tools were completed," Dalzell requested the company to apply, for its own use and benefit, for patents for inventions which he represented that he had made " while engaged in designing and constructing said tools," and which, he suggested, might, if not secured by letters patent, be made known and explained by some of the workmen then employed there to rival companies; and, as a further inducement to the company to have such patents applied for, voluntarily offered, if the company would permit him to do so, and would pay all expenses of obtaining patents, to apply therefor, for the benefit of the company, and " not ask or require any further or other consideration for said inventions and such letters patent as might be granted thereon;" and that this proposition was "then and there accepted by" the company, and "it was then fully agreed between said parties" that Dalzell should immediately proceed, through a solicitor of his own selection, to procure the patents in the name of the company, and the company should pay the necessary expenses.

Upon this point, Dueber's testimony was as follows : "Qu. Who first suggested the idea of patenting these devices, and when? Ans. Mr. Dalzell, in the spring of 1885. Qu. Please state all that took place at that time. Ans. Mr. Dalzell came to me and said, 'Mr. Dueber, we have got a very good thing here; let us patent this for the benefit of the concern; we have some men here, who may run away and carry those ideas with them.' I objected at first; finally he says, 'If you will pay for getting them out, I don't want anything for them.' I then said, 'Let us go over to Mr. Layman to-morrow, and attend to it.' He said he knew a more competent lawyer than that, that he would send for." Dueber also testified that, when Dalzell first suggested taking out letters patent, Dueber told him that he did not think the improvements of sufficient value to justify taking out patents and paying for them; and that "about all" that Dalzell replied was, "We have a good many men here who may carry off these ideas into other shops, and I want to retain them for this concern."

All this testimony of Dueber was given in September, 1886,

before the filing of the bill for specific performance. Being recalled, after this bill had been filed, he testified, on cross-examination, that he now considered the inventions covered by the patents sued on as valuable, because the company had spent a great deal of money on them; and he declined or evaded giving any other reason.

Bearing in mind that there was no proof whatever of any previous agreement between the parties on the subject, the contract as alleged in the bill and testified to by Dueber, by which Dalzell is said to have voluntarily offered, with no other motive than to prevent workmen from injuring the Dueber Company by communicating the inventions to rival companies, and for no other consideration than the payment by the Dueber Company of the expenses of obtaining patents, and without himself receiving any consideration, benefit or reward, and without the company's even binding itself, for any fixed time, to pay him the increased wages, or to keep him in its service, is of itself highly improbable; and it may well be doubted whether, if such a contract were satisfactorily proved to have been made, a court of equity would not consider it too unconscionable a one between employer and employed, to be specifically enforced in favor of the former against the latter. *Cathcart* v. *Robinson,* 5 Pet. 264, 276; *Mississippi & Missouri Railroad* v. *Cromwell,* 91 U. S. 643; *Pope Manuf. Co.* v. *Gormully,* 144 U. S. 224.

Moreover, Dueber throughout manifests extreme readiness to testify in favor of the theory which he is called to support, and much unwillingness to disclose or to remember any inconsistent or qualifying circumstances. The record shows that he has at different times made oath to four different versions of the contract:

1st. On March 16, 1886, when the Dueber Company filed a petition in the superior court of Cincinnati against Dalzell to compel him to assign his patents to it, Dueber made oath to the truth of the statements in that petition, one of which was "that, at the time of the making of application for said patents, it was agreed, for a valuable consideration before that time paid, that said patents and inventions were the property

of this plaintiff, and should be transferred to it immediately upon the issue thereof, and prior to the grant of the patents."

2d. On June 4, 1886, he made oath that the plea was true in point of fact, which stated that the whole contract, both for an increase of Dalzell's wages and for his assignment to the Dueber Company of his rights to patents for his inventions, was made "prior to any alleged invention by said Dalzell," and in consideration of an increase of wages to be thereafter paid.

3d. In September, 1886, he testified that the increase of wages was made upon the mere statement of Dalzell that he would show that the improvements he would make during the coming year would justify the increase; and that the subsequent contract to assign the patent rights was after the inventions had been made.

4th. On January 17, 1887, he made oath to the truth, of his own knowledge, of this bill, which alleged that Dalzell's wages were raised "in consideration of a promise" by Dalzell "that in the future his services would be of great value in the devising and perfecting of such tools," and also alleged that the agreement to assign the patent rights was made after the inventions.

Dalzell, being called as a witness in his own behalf, directly contradicted Dueber in every material particular; and testified that the real transaction was that, after his inventions had been made, and shown to Dueber, the latter was so pleased with them that he, of his own accord, raised Dalzell's wages, and offered to furnish the money to enable him to take out patents. There is much evidence in the record, which tends to contradict Dalzell in matters aside from the interviews between him and Dueber, and to impeach Dalzell's credibility as a witness. But impeaching Dalzell does not prove that Dueber's testimony can be relied on.

What took place, or is said to have taken place, after these interviews may be more briefly treated.

Whitney, the solicitor employed at Dalzell's suggestion, applied for and obtained the patents in Dalzell's name, and was paid his fees and the expenses of applying for the patents

by the Dueber Company with Dalzell's knowledge. In the summer of 1885, before the patents were issued, he sent blank assignments thereof to the Dueber Company to be signed by Dalzell, which Moore, the general manager of the company, as well as Dueber, in the absence of each other, asked Dalzell to sign.

Upon what Dalzell then said, as upon nearly every material point in the case, the testimony is conflicting. Dueber and Moore testified, in accordance with the allegations in the bill, that Dalzell replied that he would not sign any of them until all the patents had "passed for issue," and would then sign all together. But the manner in which they testified to this does not carry much weight. And Dalzell testified that he positively refused to assign the patents until some arrangement for compensating him had been agreed upon.

Parts of a correspondence of Whitney with Dueber, and with Dalzell, during the summer of 1885, were put in evidence, which indicate that Whitney, while advising Dalzell as to his interests, sought to ingratiate himself with the Dueber Company. But they contain nothing to show any admission by Dalzell that he had agreed, or intended, to assign the patent rights to the Dueber Company, without first obtaining some arrangement whereby he might be compensated for his inventions.

The Circuit Court, in its opinion, after alluding to various matters tending to throw discredit on the testimony of each of the principal witnesses, said, "The case is one on which different minds may well reach a contrary opinion of the merits." 38 Fed. Rep. 599. We concur in that view; and it affords of itself a strong reason why the specific performance prayed for should not be decreed.

From the time of Lord Hardwicke, it has been the established rule that a court of chancery will not decree specific performance, unless the agreement is "certain, fair and just in all its parts." *Buxton* v. *Lister*, 3 Atk. 383, 385; *Underwood* v. *Hitchcox*, 1 Ves. Sen. 279; *Franks* v. *Martin*, 1 Eden, 309, 323. And the rule has been repeatedly affirmed and acted on by this court. In *Colson* v. *Thompson*, Mr. Justice Washing-

ton, speaking for the court, said: "The contract which is sought to be specifically executed ought not only to be proved, but the terms of it should be so precise as that neither party could reasonably misunderstand them. If the contract be vague or uncertain, or the evidence to establish it be insufficient, a court of equity will not exercise its extraordinary jurisdiction to enforce it, but will leave the party to his legal remedy." 2 Wheat. 336, 341. So this court has said that chancery will not decree specific performance, " if it be doubtful whether an agreement has been concluded, or is a mere negotiation," nor "unless the proof is clear and satisfactory, both as to the existence of the agreement and as to its terms." *Carr* v. *Duval*, 14 Pet. 79, 83 ; *Nickerson* v. *Nickerson*, 127 U. S. 668, 676; *Hennessy* v. *Woolworth*, 128 U. S. 438, 442.

For these reasons, we are of opinion that the contract set forth in the bill for specific performance has not been so clearly and satisfactorily proved as to justify a decree for specific performance of that contract ; and that the decree for the plaintiff on the bill of the Dueber Company must, therefore, be reversed, and the bill dismissed.

The decree sustaining the plea to the bill against the Dueber Company for an infringement, and ordering that bill to be dismissed, is yet more clearly erroneous; for none of the evidence introduced by either party tended to prove such a contract as was set up in that plea. The only issue upon the plea and replication was as to the sufficiency of the testimony to support the plea as pleaded ; and as the plea was not supported by the testimony, it should be overruled, and the defendant ordered to answer the bill. *Stead* v. *Course*, 4 Cranch, 403, 413 ; *Farley* v. *Kittson*, 120 U. S. 303, 315, 318 ; Equity Rule 34.

It is proper to add that the question whether the Dueber Company, by virtue of the relations and transactions between it and Dalzell, had the right, as by an implied license, to use Dalzell's patents in its establishment, is not presented by either of these records, but may be raised in the further proceedings upon the bill against the Dueber Company for an infringement.

*Decrees reversed, and cases remanded to the Circuit Court, with directions to dismiss the bill for specific performance, and to overrule the plea to the other bill, and order the defendant to answer it.*

Mr. Justice Brewer dissented.