### SCHMITT v. NELSON VALVE CO. et al.

(Circuit Court, E. D. Pennsylvania. February 20, 1903.)

#### No. 41.

1 PATENTS—DEFENSE TO SUIT FOR INFRINGEMENT—EQUITABLE ASSIGNMENT.

Complainant, while in the employ of defendant, which was engaged in the business of making valves, invented an improved valve, on which he applied for a patent after a number had been made and sold by defendant. A question having arisen between the parties as to compensating complainant for the invention, a settlement was made, and complainant was given a paper, signed on behalf of defendant, by which it agreed that his salary for the ensuing 10 years should be as therein stated, the provision being for an increase from time to time, and complainant orally agreed to assign the patent. He subsequently claimed, contrary to the fact, as found by the court, that it was a further condition of the agreement that defendant would covenant for his employment during such 10 years, and refused to assign the patent otherwise, and left defendant's service. *Held*, that by virtue of the contract de-

fendant became the equitable owner of the patent, and complainant, having refused to perform on his part, could not maintain a suit for its infringement, which he could not have done if he had performed.

In Equity. Suit for infringement of patent.

Hector T. Fenton, for complainant.

Wm. B. Bodine, Jr., and George Wharton Pepper, for respondents.

DALLAS, Circuit Judge. The bill in this case alleges infringement by the defendants of letters patent No. 675,979, issued to the complainant June 11, 1901, for improvements in valves. The validity of the patent is, for the purposes of this case, conceded; but infringement is denied, and it is further insisted by defendants that the Nelson Valve Company was at first impliedly licensed to manufacture and sell under the patent, and that subsequently it became the equitable owner thereof. With reference to these last-mentioned defenses, the effect of the testimony, where disputed, will now be considered, and my findings of fact upon all the evidence will be stated.

At the time of making this invention, and for some time prior thereto, the complainant was the superintendent and acting draftsman of the Nelson Valve Company. The need for the improvement which he devised was brought to his attention by a representative of the American Product Company, a buyer of valves, who explained to him that those which had been theretofore constructed by the Nelson Company were not satisfactory to the Product Company. He told him why they were not satisfactory, but did not tell him how they could be made so. He pointed out their defective operation, but proposed no remedy for it. He prompted the invention, but he had no part in making it. It was made solely by the plaintiff, but it was his connection with the Nelson Company which led him to make it. He has testified that it was conceived at his home, and that he there made a rough drawing of it; and I would not be warranted in wholly discrediting this testimony, either because he was unable to produce the drawing when the evidence was being taken, or because he had not shown it to Mr. Bonnell, an officer of the Nelson Company, to whom, as has been argued, he would naturally have exhibited it. On the other hand, there is nothing to impeach the testimony of Mr. Bonnell to the effect that the construction of a valve which would meet the requirements of the Product Company was the subject of a conversation, at the Nelson Company's works, between himself and the plaintiff, of the Nelson Company, and Mr. Beaston, of the Product Company, and that suggestions were then made by both Bonnell and Beaston. This may all be true, however, and yet the plaintiff's statement as to the time and place at which the invention was actually made be consistently accepted. That he, and he only, in fact made it, is in this case incontestable; and there is no necessary conflict between his assertion that he worked it out at his home, and that of Mr. Bonnell, that suggestions were made at the Nelson Company's works. In accordance, therefore, with the testimony of both of them, I find the fact to be that the invention was conceived, and was set forth in a rough drawing, at the residence of

the plaintiff, but that suggestions, not effecting, in the sense of the patent law, any substantial change therein, were made at the works of the Nelson Company, before all the mechanical details of the particular valve to be manufactured for the Product Company were determined. The plaintiff made the working drawing for this valve in the company's shop, during working hours, and from the company's material. This drawing the Product Company approved, and at once ordered 32 valves. The plaintiff gave it to the Nelson Company's pattern maker, and had patterns and core boxes made from it, in the company's shop, from its materials, and by its men, who were paid by it for this work. The defendants contend that "there was experimenting with this valve for several days in the company's shop," but I do not think that what was really done has any legal significance. There was no experimenting by the inventor for the purpose of perfecting his invention. It was found that certain parts of the construction should be somewhat modified, and this was done, but without making any change in the original design which, with reference to the patent law, can be regarded as material. The "valve-spindle" was made heavier, and a handhole, for convenience of access to the interior, was put in the casing of the valve; but neither of these affected the integrity of the device. Subsequently valves of the same pattern were made and sold to the Product Company and to another company, and up to the time when the complainant left the employ of the Nelson Company, on January 1, 1902, all of said valves were manufactured and sold under his direction, supervision, and orders, and were, by his direction, marked, "Nelson Valve Co. S. & B. Pat'd," as, with reference to a certain earlier patent of Schmitt and Bonnell, all the valves theretofore manufactured by the Nelson Company had been marked. The defendants contend that "the complainant made no suggestion that he expected compensation (other than the salary he was drawing) for the manufacture and sale of the said valves, until about August, 1901"; but the complainant disputes this statement, and claims that the evidence shows that "the first valves were not put out until March, 1902," that "Schmitt spoke to Bonnell on the subject at or about that time," and that "the complainant (who was in the employ of defendant until December 31, 1901), while permitting the defendant company to make and sell these valves during the year 1901, did so on the promise of defendant's officers that it would be made all right." For solution of the question of fact thus presented, we have but the testimony of Mr. Schmitt upon the one side and of Mr. Bonnell upon the other. The former testified that he had informed Mr. Bonnell that he had applied for a patent some time in March; that he told him that he wanted some compensation for his invention outside of his salary; that Mr. Bonnell replied, "We will make these valves and adjust these small difficulties afterwards." Mr. Bonnell testified that "no conversation of that kind ever took place"; that "there never was such conversation"; that "there was nothing of that kind said"; and that he "never had any conversation with Mr. Schmitt in regard to compensation which he was to receive for the use by the company of this patent." It is only upon the assumption that such a conversation may have occurred and have been forgotten

by Mr. Bonnell that the veracity of both of these witnesses can be sustained, and therefore I deem it to be incumbent upon me to adopt that assumption. Accordingly, I find that Mr. Schmitt did tell Mr. Bonnell that he wanted some compensation for his invention, and that Mr. Bonnell replied, in substance, "We will proceed manufacturing these valves, and will straighten this small difficulty later on." As to the time at which this occurred, the testimony of Mr. Schmitt was very vague and inconclusive. He said that his recollection was that it took place after his application, which is dated March 12, 1901; that he did not recollect whether anything had been done in the way of manufacturing these valves at the time; and though, immediately afterwards, he said that "they had not manufactured them before," yet this seemingly positive statement was in turn followed by a reiteration of his previous avowal that he did not recollect whether the company had or had not manufactured or taken any steps toward the manufacture of these new valves prior to the date of the conversation. The first order was given on or about the last day of February, and the first delivery was made on March 11, 1901; and Bonnell's testimony is that Schmitt never advised him that he had applied for the patent prior to April or May. I therefore cannot say that the conversation in question took place before the Nelson Company had, with Schmitt's knowledge and assent, sold and delivered valves embodying his invention. On the contrary, the testimony as a whole has convinced me, and accordingly I find, that whatever was said by Schmitt on the subject of compensation was said after some of these valves had been ordered, made, and delivered; that Bonnell then indefinitely postponed consideration of the matter; and that Schmitt acquiesced in that postponement, without any understanding having been reached as to whether he was to be compensated by raising his salary, as prior to the making of this invention had several times been done, or by paying him a royalty or license fee. The statement made by Schmitt that the "little difficulty" to which Bonnell had referred was "royalty" is mere surmise; there is no evidence to support it, and Bonnell testified that nothing was ever said by him to Schmitt about royalty.

It is admitted on both sides that there was a parol agreement made between these parties on October 26, 1901, but they differ as to what that agreement was. The undisputed facts are that a special meeting of the directors of the Nelson Valve Company was held upon October 26, 1902, at which a majority of the board, and Mr. Schmitt himself, were present, and at which a paper was drawn up, and signed by all the directors in attendance, as follows:

"It is agreed by the Nelson Valve Company, its successors and assigns, that the salary of H. J. Schmitt shall be as follows from January 1st, 1902, to June 30th, 1904, at the rate of forty-five dollars per week, payable weekly, from July 1st, 1904, to Dec. 31st, 1906, at the rate of fifty dollars per week, payable weekly, from January 1st, 1907, to June 30th, 1909, fifty-five dollars per week payable weekly, from July 1st, 1909, to Dec. 31st, 1911, sixty dollars per week payable weekly, for services to be rendered to the said Valve Company, its successors and assigns.                          S. F. Houston.

"E. W. Ward.

"Russell Bonnell."

An attested copy of this paper was given to Schmitt, and subsequently he requested a copy under the company's seal, and this was given to him in substitution for the attested copy. Schmitt has testified that at this meeting all open questions between him and the company were settled, and, indubitably, the assignment of this patent was then agreed upon. But the parties disagree as to the terms upon which this was to be done. The defendants insist that the paper of October 26, 1901, contained the entire agreement on the part of the company, and that thereupon the defendant orally agreed to have his counsel prepare and to execute an assignment to the Nelson Company of, inter alia, the patent in suit. The plaintiff, on the other hand, contends that his agreement to assign was made "in consideration of a promise of employment for ten years from the following January 1, 1902, at an increased salary." The question, briefly stated, therefore is: Did Schmitt agree to assign in consideration of the company's undertaking as set forth in the writing of October 26, 1901, without the assumption by it of any obligation to continue him in its employ, other than such as is by law attached to such an undertaking, or was it further and additionally agreed that the company would absolutely, and under all contingencies and conditions, retain him in its employment for ten years? This question admits of but one answer. It is hardly conceivable, I think, that the company would, if asked, have promised that for ten years it would keep Schmitt in its service, no matter what occasion should arise to justify a determination of his connection with it; and, though it is true that the paper of October 26, 1901, did not set out the agreement of Schmitt, yet to me it seems to be evident that it was intended to present the entire agreement on the part of the company, and that the stipulation on its part, which the complainant now asserts was made, would not have been omitted from it if in fact it had been. But probabilities and presumptions need not be dwelt upon, for the weight of the evidence directly upon the subject is unquestionably with the defendants. Bonnell, Ward, and Houston all, in substance, testified that Schmitt expressed himself as being satisfied with the paper which they signed, and that in consideration of the promise evidenced by it, and of that alone, he agreed to assign this patent; and I believe, and therefore find, such to be the fact, notwithstanding the testimony of Schmitt himself to the contrary. I need not impute to him conscious and deliberate falsification; but the utmost that can be fairly said in his exculpation is that some time after the agreement in question had been actually made he was led to think that the writing was not as advantageous to him as it should be, and that, dwelling upon this thought, he may have persuaded himself that an additional oral promise had been made to him, although the fact was otherwise. At all events, he refused to assign the patent unless the company would covenant for his employment for ten years, and this it has declined to do.

I do not deem it necessary to decide whether or not, at any time prior to the meeting of October 26, 1901, the Nelson Company had acquired an implied license to manufacture and sell the invention covered by the patent in suit, or to determine whether, in point of fact, the valves which it has made and sold embodied that invention;

for, in my opinion, the agreement of October 26, 1901, is, in itself, a sufficient and full defense to this suit. It canceled all claims (if any) then existing, for it settled all "open questions," and that, by virtue thereof, the Nelson Company became the equitable owner of the patent itself, seems to me to be scarcely questionable. Walker on Pat., § 274; Dalzell v. Dueber Co., 149 U. S. 320, 13 Sup. Ct. 886, 37 L. Ed. 749. A complainant who has refused performance of a contract cannot be awarded relief to which, if he had performed it, he would not have been entitled.

The bill of complaint is dismissed, with costs.