THOMPSON v. AUTOMATIC FIRE PROTECTION CO. et al.

(District Court, E. D. New York. July 2, 1912.)

1. PATENTS (§ 195*)—ASSIGNMENT—VALIDITY OF CONTRACT.

A contract, by which a defendant agreed to work for complainant on inventions and to assign to complainant any invention or patentable improvements he might make during his employment, is not invalid because it was left to complainant to fix his compensation, as to any invention he made while he continued the employment, although that may have justified him in terminating the contract at any time.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 272–274; Dec. Dig. § 195.*

Right to inventions as between employer and employé, see note to Pressed Steel Car Co. v. Hansen, 71 C. C. A. 221.]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

2. PATENTS (§ 203*)—ASSIGNMENT—RIGHTS OF ASSIGNEE.

Evidence considered, and *held* to show that a defendant corporation at the time it took an assignment of an application for a patent had such knowledge of complainant's claim to the ownership of the invention that it acquired no greater rights than the assignor as against such claim.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 290–294; Dec. Dig. § 203.*]

3. PATENTS (§ 203*)—ASSIGNMENT OF APPLICATION—RIGHTS OF ASSIGNEE.

An assignment of an application for a patent does not convey a legal title to the patent prior to its issuance, but only to such rights as the applicant may have, and its record cannot cut off an equitable claim to the invention and patent which is good as against the assignor, and especially where the assignee had notice of such claim.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 290–294; Dec. Dig. § 203.*]

4. PATENTS (§ 195*)—SUIT TO ENFORCE CONTRACT FOR ASSIGNMENT—PARTIES.

An applicant for a patent assigned his application and rights thereunder to a corporation. At the same time four other later applications, which were in interference with the first, were also assigned to the corporation, and were then abandoned; the five assignors receiving stock in a new corporation organized to handle the patented device. *Held*, that to a suit by complainant to establish and specifically enforce a contract with the first applicant for the assignment of the patent to complainant, in which the corporation assignee was joined, the assignors of the other applications were not necessary parties.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 272–274; Dec. Dig. § 195.*]

In Equity. Suit by Everett L. Thompson against the Automatic Fire Protection Company and Edward F. Shipman. On final hearing. Decree for complainant.

Duncan & Duncan, of New York City, for complainant.

Griggs, Baldwin & Pierce, of New York City (Martin Conboy, of New York City, of counsel), for defendants.

CHATFIELD, District Judge. A demurrer to the complaint herein was considered and the jurisdictional facts were narrated in an opinion overruling the demurrer, reported in (C. C.) 155 Fed. 548. Testimony has now been taken and the case presented upon final hearing. The only fact which has been brought out, which is not in accord with the statement based upon the allegations of the complaint, is: that the defendant Shipman has never succeeded in obtaining a patent upon his application, made in April, 1903, but that numerous interference proceedings in the Patent Office, complicated by subsequent powers of attorney from Shipman to the solicitors for the complainant herein, have resulted in a declaration by the Patent Office that actual issuance of a patent upon the Shipman application will be withheld until this litigation between the defendants and the complainant is determined.

According to the testimony now presented, the complainant, Thompson, as early as March 31, 1900, read a magazine article describing the prevention of bursting water pipes, by providing a compression chamber in which a cushion of air will be secured through the use of an

automatic air-inspirator, operated by the decrease of pressure back of a tapering nozzle within the water pipe.

A sketch of a device by which an electric alarm could be actuated through the movement of a contact operated like the air-inlet in the anti-freezing device, was made and signed by Thompson upon the 31st day of March, 1900. This paper has been put in evidence, and definitely establishes the existence of the conception in Thompson's mind as of that date.

It also now appears that neither Thompson nor the Automatic Fire Protection Company are interested in the manufacture or sale of the alarm device alone, but because some such device is necessary and useful in connection with what is known as a sprinkler system or a method of protection against fire, by which water shall be distributed through sprinklers over the area for which the protection is sought.

The improvements and changes from the original sketch by Thompson, in his subsequent patent (No. 743,049, of November 3, 1903), and by Shipman in his experiments and in his own application to the Patent Office, are in the direction of a device by which some sudden disturbance of the water supply, such as can best be illustrated by the term "water hammer," or a momentary interference with the water pressure will not start the giving of an alarm. On the other hand, it is desirable that a constant flow of water through the sprinklers or supply pipes, whether from the temperature generated by fire, or a leak, or any other permanent flow, will start the alarm in motion and attract attention.

The devices of the Thompson patent and the devices of the Shipman application are sufficiently alike to plainly justify the action of the Patent Office in requiring a determination of the litigation between Shipman's assignees and Thompson, in his own right, and also as grantee of Shipman, before the application shall be finally passed upon.

The complainant now contends: First, that the original contract, as shown by the testimony, for work by Shipman, with an assignment of patentable improvements, is valid; second, that the parties forming the Automatic Fire Protection Company, as well as Shipman himself, had knowledge of the possible equitable assignment of his application for a patent and of Thompson's claim thereto; and, third, that the rights assigned by Shipman to the Automatic Fire Protection Company conveyed an equitable interest only, which will not become vested until the patent is granted. They urge, inasmuch as Thompson has an equitable right to an assignment of the invention which they claim is clearly anterior to any attempted assignment to the defendants, that Thompson's equity or right to receive the patent should be held superior and that he should have a decree.

[1] As to the contract and its legality there is not much question. See decision on demurrer (C. C.) 155 Fed. 548. If Shipman invented something patentable while working on Thompson's devices and ideas, and in the line of an improvement thereon, as has already been decided upon the demurrer, he could contract with Thompson to do

this work as a mechanic, or as a possible inventor, for the limited period covered by his continuation in the employment, if the contract entered into be equitable and capable of enforcement.

The indefiniteness of the consideration, in so far as Thompson agreed to pay Shipman what Thompson found to be fair for the same, might have been ground for Shipman's terminating the services, but does not make the contract invalid as inequitable, unless Thompson be attempting to hold Shipman, while arbitrarily or inequitably refusing to make a fair determination of the amount which he should pay.

[2] As to the second point, more testimony has been presented than upon the others, and the principal question of fact is involved therein. The defendant, the Automatic Fire Protection Company, organized by five individuals, is in business in Chicago, and entered into negotiations with Shipman to purchase his applications. The interviews developed into agreements between various parties whose claims were in interference in the Patent Office, and of which the Shipman application was the earliest. The negotiations resulted in an arrangement by which the five men referred to assigned their applications to the Automatic Fire Protection Company, and were to receive each $2,000 worth of stock in a corporation to be known as the Universal Sprinkler Alarm Company, which was to have the business of installing separate or local alarms, and also to receive a royalty on each alarm valve used in equipping central office alarm systems, for the installation and maintenance of which the Automatic Fire Protection Company reserved the right to contract.

Shipman's $2,000 worth of stock has never been transferred to him, inasmuch as he has not procured his patent, but Shipman was assisted in finding employment by the president of the Automatic Fire Protection Company for some year or 15 months, and he received $150 in cash. He then left Chicago and subsequently appeared in New York, where he employed the complainant's solicitors to pursue the application in the Patent Office for him, repudiating his previous power of attorney and assignments, and then filing an assignment to Thompson.

At some time, said by McElroy, the president of the Automatic Fire Protection Company, to be in the year 1909, Shipman had an interview with McElroy, in which he told him that Thompson claimed the application in question. But there is not a great amount of definite proof from which to draw the inference that McElroy and the other men interested in the meetings, from which the Universal Sprinkler Alarm Company was formed, had any knowledge in 1905 that Thompson might be entitled to an assignment. They did have knowledge that Shipman had been working for Thompson on similar devices; that Thompson had patented one device, which Shipman charged him with stealing; and that Shipman had invented an improvement which Thompson would desire. They could deal with Shipman only at their own risk, and, if he had no right to convey, they would get nothing. They knew that he had kept the matter secret, even if their testimony does not show actual knowledge of

any contract. Shipman was not called as a witness, but his affidavit was offered in evidence over objection. Any testimony by Shipman would be weakened by his application for a patent, after his break with Thompson, for an improvement admittedly worked out for Thompson's benefit, and that he voluntarily went into the new corporation, opposed Thompson's rights, and then deserted his new associates and put himself back in Thompson's hands. His affidavit would be admissible against him. But he has defaulted, and the status of the present suit is such that his affidavit cannot be received as testimony against the other defendants, and he should have been called as a witness and subjected to cross-examination. But the complainant's contention is corroborated in a sense by the testimony of some of the five men who were present. They intimate that Shipman then told them about Thompson's experiments along the same lines; that Shipman had been working for Thompson and had been compelled by Thompson to assign to him an earlier patent; and that Shipman left in order not to have to assign the present one to Thompson. Other particulars appear which were the basis of the inquiry by one of the directors of the defendant company, who says that he was interested in ascertaining if Shipman had a legal right to his invention, and all of them went as far as they thought necessary to investigate his statements, and they surely had notice enough to put them on inquiry with respect thereto.

The only cloud on Shipman's title to the invention which could have been the subject of inquiry at this conference must have arisen from his employment by and relations with Thompson in this very business; and the fact that Shipman's stock was to be trusteed, or that it was not to be delivered until he received his patent, while the stock of the other men (who gave up their claims in the Patent Office, but who would have nothing to receive for the stock until the Shipman application became vested) was paid over immediately, further indicates that the defendants had some doubt as to whether Shipman would be able to deliver what he claimed.

No matter what Shipman's motive may have been in leaving the defendants and again taking up relations with Thompson, his conduct in so doing was in accord with his legal obligations, and there seems to be no reason why Thompson's rights should be interfered with upon that ground.

[3] The last point is rather unusual, for the circumstances upon which the doctrine can be invoked do not often occur. It seems to be plain that legal title to a patent does not completely vest in the assignee until the patent is issued. Before that, an assignment of the right to the patent gives the assignee merely legal title to such rights as the patentee may have. As between the assignee and the United States these rights are equitable; that is, subject to all equities or legal objections which could be urged by the government against the applicants themselves. It is like enforcing specific performance of a contract; that is, it is the carrying out of a statutory provision which if granted will result in contractual relations between the government and an individual. Schmidt v. Nelson Valve Co., 125 Fed.

754, 60 C. C. A. 522. That being the case, an application filed within the statutory time, by an alleged prior inventor, or by another applicant claiming to be the real inventor, would be examined, and the government would not issue a patent to an assignee, who might be an innocent purchaser of rights under an invalid application, but would recognize the man with the earliest equity; that is, the right to the earliest claim of invention.

The statute protects the priority of assignment of the subject-matter assigned. It does not indicate that the first person filing an assignment will be recognized as having greater rights than the applicant himself, but protects, as to subsequent assignees, and also forecloses those who are required by the statute to file an assignment within the period of three months. The assignee gets no greater title, by reason of his good faith, unless the record of his title has protected him, and, of course, a knowledge of lack of title would deprive the assignee of any benefit by recording an assignment, against any one who could succeed against the applicant himself.

Section 4898 R. S. (U. S. Comp. St. 1901, p. 3387), provides for the record of an assignment of rights in a patent, applied for but not yet issued. This does not prevent the enforcement of an equitable right to the patent itself, if that equitable right be superior, and be available against the applicant and the assignee. A contract to convey any invention, if patentable, may be the basis for an equitable right to specific performance, and the assignee may hold the patent as trustee, for the equitable claim. Dalzell v. Dueber Mfg. Co., 149 U. S. 315, 13 Sup. Ct. 886, 37 L. Ed. 749.

The record of an assignment cuts off all legal rights not properly recorded, and all equitable rights not superior to the vesting of the legal title. The actual issue of the patent, or perhaps action within three months thereafter, would seem to make the legal title superior to the equitable right. Cook v. Sterling (C. C.) 118 Fed. 47; Davis. Imp. W. I. W. W. Co. v. Davis W. I. W. Co. (C. C.) 20 Fed. 699.

But in the present case the record of the assignment to the Automatic Fire Protection Company could not cut off an equitable claim, which was not capable of record, but which was asserted before the assignee's rights have been perfected by the issuance of the patent; and much less should the assignment prevail, where the assignee was put upon notice that he was purchasing only if the inventor had a right to convey.

Actual notice of an equitable claim would defeat the assignee. Littlefield v. Perry, 88 U. S. 224, 22 L. Ed. 557. Nor would an assignee obtain more than his assignor, the applicant, had, except that the assignment when recorded would cut off the claim of a prior unrecorded assignment of the patent application. Cook v. Sterling, supra. See, however, American S. L. B. Co. v. Empire State N. Co. (C. C.) 47 Fed. 741.

The government record of a patent, when issued, may be construed as notice to all persons, whether claiming a legal right capable of assignment, or an equitable right which would be defeated by actual

transfer of possession of the legal title. But, to hold that the test of laches, or the ordinary statute of limitations, would not be applied to an equitable cause of action against a wrongdoer, or an assignee who stood in his shoes, but that the court should test this equitable right by a three months' limitation, provided for recording the assignment to a patent application, actually in existence and filed, would be impossible.

If we find, therefore, that Thompson had a valid contract with Shipman, we must hold, upon the testimony, that his rights to receive the patent are superior to those of the Automatic Fire Protection Company. The other defendant, who is Shipman himself, has admitted, by not contesting the action, the validity of the rights which the complainant seems to have against him.

[4] The defendants raise an objection to the jurisdiction of the court, claiming that a decree cannot be made in this action without the presence of the four men who joined with Shipman in the transfer of their claims to the Automatic Fire Protection Company, and who have already received the shares of stock in the Universal Sprinkler Alarm Company, and without this latter corporation also as a party defendant.

It would seem that these parties have an interest in the result of the litigation, that their knowledge of Shipman's relations with Thompson at the interview in question was a matter of evidence, and that the title of the Automatic Fire Protection Company may depend upon what representations were made, or what information was disclosed to the men at the time. They might well have been brought in, or might have sought leave to join in the action, in order to protect the agreement into which they entered; but there seems to be no reason why the question of the title assigned to the defendants cannot be disposed of without their participation in the action. In other words, they are not necessary to a determination of rights between the parties hereto, as their claim is derived from and dependent upon the assignment to the Automatic Fire Protection Company, and the issue can be fully disposed of between the complainant and the defendants of record. If consideration for their withdrawal from the interference proceeding has failed, they can still proceed to oppose the issuance of the patent to Shipman, if he is not entitled or the actual inventor.; but those questions could not be settled in this suit under any circumstances.

The complainant may have a decree.