**Burrell H. TRIPP**

v.

**The UNITED STATES.**

No. 337–63.

United States Court of Claims.

Feb. 14, 1969.

Caspar C. Schneider, Jr., New York City, N. Y., attorney of record, for plaintiff; James W. Bock and Davis, Hoxie, Faithful & Hapgood, New York City, of counsel.

Louise O'Neil, Washington, D. C., with whom was Asst. Atty. Gen., Edwin L. Weisl, Jr., for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

### OPINION

PER CURIAM:

This case was referred to Trial Commissioner Donald E. Lane with directions to make findings of fact and

recommendation for conclusions of law under the order of reference and Rule 57(a). The commissioner has done so in an opinion and report filed on February 27, 1968. Exceptions to the commissioner's opinion, findings of fact and recommended conclusion of law were filed by defendant and the case has been submitted to the court on oral argument of counsel and the briefs of the parties. Since the court agrees with the commissioner's opinion, findings and recommended conclusion of law, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case. Therefore, the court concludes that claims 1, 2 and 3 of patent 2,666,962, are valid and have been infringed by the defendant's unauthorized use thereof in hangar No. 7000 at Westover Air Force Base, that claims 1 and 2 of said patent have been infringed by at least one or more other multipurpose wing hangars at Westover Air Force Base, and that plaintiff is entitled to recover reasonable and entire compensation therefor. Judgment is entered for plaintiff to that effect with the amount of recovery to be determined pursuant to Rule 47(c) (2).

## OPINION OF COMMISSIONER

LANE, Commissioner:

This is a patent suit under Title 28 U.S.C. § 1498, for reasonable and entire compensation for the unauthorized use of plaintiff's patented invention. Plaintiff alleges infringement of claims 1, 2, and 3 of U.S. Patent No. 2,666,962, issued on January 26, 1954, to the plaintiff, Burrell H. Tripp. The parties have agreed to defer trial of any accounting issues until the issues of patent validity, patent infringement, and license are decided by the court. It is found that claims 1, 2, and 3 of the plaintiff's patent are valid and have been infringed by the defendant.

The patent in suit describes and claims door closures for aircraft wing hangars. A wing hangar is a building designed to house the forward portion of an aircraft for maintenance work. By enclosing only the forward portion of the plane from the nose to a point rearward of the wings, leaving the tail assembly exposed, the size and cost of a hangar are reduced. The patented invention provides an efficient door closure about the fuselage of an aircraft projecting from a wing hangar.

Patent claim 1 is reproduced below with indentation added to aid in identification of the separate elements of the claim:

### Patent Claim 1

Closure for wing hangars for aircraft having fuselages, said closure comprising

a pair of doors, each of said doors having a section cut out to admit one-half of an aircraft fuselage, each door being arranged to meet the other at the center line of the fuselage, and

means compressible in the plane of the doors for insertion between said doors and an aircraft fuselage in combination with

a removable insert in each door, said cut-out section being located in that insert, whereby cut-out sections of various shapes can be put in said doors to suit different aircraft and a weathertight cushion seal is provided about the fuselage of the aircraft.

The means compressible in the plane of the door seals the door about the fuselage of an aircraft. Also this compressible means provides a cushion which prevents damage to the aircraft fuselage due to slight movement of the aircraft which may result from wind gusts acting on the exposed tail portion of the aircraft. The removable insert in each door in combination with the means compressible allows a single wing hangar to accommodate different aircraft having different fuselage dimensions. The patent disclosure and patent claims are described in detail in the accompanying findings of fact.

The principal defenses raised by the defendant are that the claims of the Tripp patent are invalid, that the asserted patent claims have not been infringed by defendant, and that the Government

is entitled to a comprehensive license under said patent. Estoppel and laches defenses are coupled with the license defense. Defendant also has asserted that Tripp was not the inventor of the subject matter claimed in said patent. The latter assertion is not supported by evidence of record.

In support of its defense of invalidity of claims 1 and 3 in view of the prior art, defendant primarily relies on the references cited in the application file of the Tripp patent, and a photograph in the corporate newsletter *Convairiety*. In regard to asserted patent claim 2, defendant has cited patents to Boyden 198,186, Stow 1,303,984, and Balch 880,350. The above three patents have also been asserted by defendant against claims 1 and 3. The teachings of these prior patents are so remotely related to claims 1 and 3 that no extended discussion is required.

The Tripp invention defined in claims 1, 2, and 3 is novel and useful. To be patentable, the subject matter as a whole must also have been unobvious to one having ordinary skill in the art at the time the invention was made. (Title 35 U.S.C. § 103.) In determining the question of obviousness, the factual inquiries suggested by the Supreme Court in Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), have been followed. Findings 9–17 reflect the scope and content of the prior art. The only relevant item of prior art cited by defendant which was not of record during Patent Office proceedings is a hangar door construction which existed in San Diego, California, and was illustrated in the *Convairiety* publication in 1950. The trial testimony established that this door construction was a slight variation of admittedly old canvas flap closures and was not a significantly more pertinent reference than the application file citations. The differences between the prior art and the claims in issue are set forth in the findings. Other than the patent application file, the prior patents and the *Convairiety* publication introduced by the defendant and the testimony relating thereto, there is no probative evidence of record in this case which shows the average level of skill in the art of designing closures *as of the time* the Tripp invention was made. The prior patents and the *Convairiety* publication and the testimony of defendant's witnesses relating to these patents and the publication do not tend to show a level of skill superior to that taught in the application file citations. As a result of the above factual inquiries, it is concluded that the Tripp invention was unobvious at the time the invention was made. The differences which exist between the patented invention and the prior art are not suggested by the prior art.

Defendant attacks the validity of claims 2 and 3 on the ground that they are not adequately supported by the specification as required by Title 35 U.S.C. § 112. It is found that the patent specification discloses to one skilled in the art how to make and use the invention. The specification and claims comply with the statutory requirement.

By stipulation of the parties, the infringement issues for initial determination have been limited to aircraft hangar No. 7000 and the multipurpose wing hangars at defendant's Westover Air Force Base, Massachusetts. The question of infringement by each of the several other hangar constructions identified in the petition has been deferred until an accounting trial.

Hangar No. 7000 as discussed below infringes the asserted patent claims. Plaintiff has also made out a prima facie case of infringement in relation to the multipurpose wing hangars at defendant's Westover Air Force Base. Plaintiff has proved that multipurpose wing hangars constructed in accordance with drawings and specifications supplied by defendant infringe claims 1 and 2 of the patent in suit. Uncontradicted testimony correlates the drawings and specifications with the multipurpose wing hangars constructed at Westover.

A review of the specification and the application file of the patent in suit

shows that the patent claims must be construed broadly enough to cover the closures of hangar No. 7000. The recitation in patent claim 1 of "means compressible in the plane of the doors for insertion between said doors and an aircraft fuselage" covers means such as inflatable tube cushioning disclosed in the patent specification and equivalents thereof. It is found that the corresponding element of the accused structure, a foam rubber cushion, is the equivalent of the illustrated inflatable tube in the environment of a door closure for a wing hangar and that it functions in substantially the same manner to obtain substantially the same result. Defendant has urged that the application file limits the scope of the above-quoted claim terminology. There is no basis in the application file for urging that the terminology used to describe the elements of the allowed claims was narrowed by amendment or cancellation of claims pending before the Patent Office. The examiner allowed claims with broad terminology as soon as the claims included the means compressible and the removable inserts having a cutout section and excluded a recitation of the building as an element. Specifically, the claim 1 term "for insertion" was not critical to patentability as can be seen from comparing original claims 7 and issued claim 3.

The patent claims require an insert cut to the shape of one-half an aircraft fuselage. In hangar No. 7000 there are two-segment inserts for each door; each segment is cut out to accommodate approximately one-quarter of the fuselage. Defendant's hangar drawings refer to the two segments, taken together, as the "insert." The two-segment inserts in the accused structure amount to an insignificant variation of the disclosed embodiment of the Tripp patent and are encompassed by the claim language.

With regard to claim 3 of the patent, defendant argues there is no resilient "ring cushion" as required in this claim. However, the foam rubber padding forms a ring when sealing an aircraft

fuselage as can be seen in the photographs comprising plaintiff's exhibits 2–5.

An element-by-element comparison of claims 1–3 with the door closures in hangar No. 7000 at Westover is set forth in the findings of fact. A similar comparison has been made relating claims 1 and 2 to multipurpose wing hangars constructed at Westover in accordance with the plans and specifications which comprise plaintiff's exhibits 12–16. It is concluded that hangar No. 7000 infringes asserted patent claims 1, 2, and 3 and that at least one multipurpose wing hangar at Westover infringes claims 1 and 2.

Defendant has asserted that it is entitled to a comprehensive implied license under the patent in suit by virtue of two contracts between defendant and the Luria Engineering Company, plaintiff's employer, hereinafter Luria, and also by virtue of plaintiff's role in negotiating these contracts. Contract AF 33(038)–18824, hereafter referred to as the B–36 contract, called for the design, fabrication, and erection of B–36 maintenance docks. Contract DA 49–129–Eng–215, hereafter referred to as the Corps of Engineers contract, caller for sale of working drawings for multipurpose wing hangars.

The license defendant claims is a comprehensive license covering closures for all wing hangars built by or for defendant to house all types of aircraft. The claimed license asserted is far broader than any implied license from Tripp to defendant which would be required to effect the purpose of the B–36 contract. A license of the scope asserted by defendant cannot be implied on the theory it is necessary for the Government's use of the B–36 hangars constructed by Luria. Plaintiff does not seek compensation for B–36 hangars sold by Luria to the Government. Neither the B–36 contract nor the Corps of Engineers contract gave defendant an express license. Under the B–36 contract, defendant was entitled to a license if the invention was a "Subject Invention" made by an inven-

tor who could be classed as "Technical Personnel." If a "Subject Invention" was made by other than "Technical Personnel," the license was to be granted only to the extent that the contractor could do so without incurring royalty payments. The contract definitions of the above terms are reproduced in finding 40. Plaintiff contends (a) that the invention is not a "Subject Invention," (b) that Tripp cannot be classified as "Technical Personnel," and (c) that Luria could not sublicense defendant for other than hangars constructed by Luria without incurring monetary liability. The merit of the last two positions dispose of the express license issue under the B–36 contract. The plaintiff did not have an engineering background or technical experience. His employment by Luria was not for the purpose of making inventions. No express contract existed between Luria and Tripp to assign inventions to Luria. Tripp could not be reasonably expected to make inventions. He was not "Technical Personnel."

Litigation between employers and employees involving ownership of a patented invention made by the employee usually turns on the specific facts of the employment relationship. See Neumeyer, Employees' Rights in Their Inventions, 44 JPOS 674 (1962). In the absence of an express contract to assign inventions, courts have usually required an employee to assign an invention to his employer only if he had been hired to make inventions or if he had been given a task which would require making inventions. See United States v. Dubilier Condenser Corp., 289 U.S. 178, 53 S.Ct. 554, 77 L.Ed. 1114 (1933), Dalzell v. Dueber Watch Case Mfg. Co., 149 U.S. 315, 13 S.Ct. 886, 37 L.Ed. 749 (1893). Defendant recognizes the decisional trend of state court decisions following the above Supreme Court cases, but contends that plaintiff's fiduciary status as an officer and director of Luria requires assignment of the Tripp invention to the corporation. New York law governs the status of Luria and plaintiff, both New York residents. See

Dill Mfg. Co. v. Goff, 125 F.2d 676 (6th Cir. 1942), cert. denied, 317 U.S. 672, 63 S.Ct. 77, 87 L.Ed. 540 (1942). Decisions by New York courts do not require assignments of inventions made by an employee in a fiduciary relationship with a corporation in the absence of an express agreement or employment for the purpose of making inventions. See Cahill v. Regan, 121 USPQ 58 (N.Y. Ct. App. 1959), where the employee was hired to manage and supervise a manufacturing operation. It follows that Luria could not, without the consent of the owner, license an invention to which it held no legal or equitable claim of ownership. The patent provisions of the B–36 contract recognize this rule of property law by not attempting to extract a license for an invention made by other than "Technical Personnel." Assuming, without deciding, that Luria was entitled to a shop-right, such would not empower Luria to license defendant. Ushakoff v. United States, 327 F.2d 669, 673, 164 Ct.Cl. 455, 462 (1964).

Defendant also claims an express comprehensive license under the provisions of the Corps of Engineers contract. Article 6 of this contract, reproduced in finding 51, calls for transfer of notes, designs, drawings, memoranda, and other technical data, etc., to the Government with the Government acquiring the right to use this material for any public purpose without further compensation. The contract does not call for transfer of patent rights. It is found that the Government was put on reasonable notice of the existence of Tripp's patent and his intention to assert a claim for compensation prior to execution of the Corps of Engineers contract. With this background of negotiations, it is not reasonable to assume that the parties intended the contract to pass a license to the asserted patent without any specific language calling for such a license. It is concluded that defendant is not entitled to a comprehensive license under the patent in suit.

Factually related to the alleged license defense are defendant's asser-

tions that plaintiff should be barred from recovering for infringement of his invention because of (a) laches and (b) his role in negotiating the B–36 and Corps of Engineers contracts. The evidence does not support the laches defense. The issuance of plaintiff's patent on January 26, 1954, first gave plaintiff enforceable rights to exclude others. Prior to the issuance of the patent, plaintiff gave oral notice of his patent application and intent to demand compensation to the Government agent having responsibility for negotiating all architect-engineer contracts for the Corps of Engineers at that time. On March 9, 1954, as a result of the license negotiations with Luria, the Air Force considered investigating the extent of Government procurement which incorporated devices covered by the Tripp patent. The issue of defendant's claim to a confirmatory comprehensive license was not settled until March 18, 1955. Plaintiff's written notice of infringement to defendant was sent 3 years and 8 months after defendant terminated its license negotiations with Luria, and 4 years and 10 months after the patent issued. Defendant was not prejudiced by the timing of plaintiff's suit as it had, from the date of issue of the patent, notice of plaintiff's intent to demand compensation, an intent which was consistently expressed. Plaintiff, an individual, could reasonably delay bringing suit until he could determine that the extent of possible infringement made litigation monetarily ripe.

The acts of plaintiff in consenting to the use of his invention in hangars built under the B–36 contract do not provide a basis for estoppel in this action. Plaintiff does not seek compensation for the Government use of hangars built by Luria under the B–36 contract. He has consistently demanded compensation for unauthorized usage by the Government of his patented invention. It is concluded that plaintiff is not estopped by his actions from recovering compensation.