THE NATIONAL CASH REGISTER COMPANY, Respondent, v. REMINGTON ARMS COMPANY, INC., Appellant.

First Department, March 20, 1925.

Patents — action to compel defendant to transfer to plaintiff all rights in two inventions assigned by inventor to defendant — action based on contract between plaintiff and inventor, formerly in plaintiff's employ — inventor entered plaintiff's employ in 1909 under contract for one year — contract provided that if at end of year inventor did not desire to continue, and left plaintiff's employ, he would not enter employ of similar corporation for one year, and would assign to plaintiff all inventions made during said year — at end of year inventor was refused another time contract by plaintiff — later, inventor signed contract without time limit and without said provision — in 1917, inventor, within one month after he left plaintiff's employ, entered defendant's employ — inventor, with three others, conceived and developed invention in question — defendant expended nearly $1,500,000 in preparation for manufacture of invented article — said invention does not infringe plaintiff's inventions — restrictive clause in original contract terminated at end of contract period — subsequent employment was at will — said restriction did not apply to inventor when he finally left plaintiff's employ — said restriction not enforcible against defendant, who was not party to contract between plaintiff and inventor — contract of employment construed strictly against plaintiff — it would be unjust and inequitable to compel assignment — complaint dismissed.

The plaintiff is not entitled to a decree compelling the defendant to assign to it all its rights, title and interest in an invention of a cash register which was conceived and developed by an inventor working in conjunction with three others, within one year after the inventor had left the plaintiff's employ, for the theory of the plaintiff's actions that all inventions conceived and developed by said inventor within one year after he left its employ belonged to it, under the terms

344 NATIONAL CASH REGISTER CO. *v.* REMINGTON ARMS CO., INC.

First Department, March, 1925. [Vol. 212

of a contract of employment executed by the plaintiff and the inventor in 1909, cannot be sustained, since it appears that the contract of employment referred to provided specifically that it was for one year's employment and contained the clause on which the plaintiff now relies, to the effect that if at the end of the year the inventor no longer desired to remain in the plaintiff's employ and left the plaintiff's employ, then the inventor would not enter the employ of another concern of a similar nature for one year, and that all inventions by the inventor relating to cash registers, made during the year following the termination of the contract, should be assigned to the plaintiff; that shortly after the end of the year specified in the contract, the inventor asked the plaintiff to make another time contract, but the plaintiff refused to do so and would only make a contract with the inventor without a provision as to the length of time of employment; that, therefore, the inventor signed a contract, similar to that executed by all other inventors in the employ of the plaintiff, which did not specify that the inventor was employed for any particular time and did not contain the restrictive clauses found in the original contract; that the inventor continued in the employ of the plaintiff under that arrangement until September 1, 1917, when he left the plaintiff's employ and within a month thereafter began work for the defendant, under a contract executed August 17, 1917, with three other inventors, on a new cash register which they were to invent along such lines as not to infringe on any existing patents; that the inventor, in conjunction with said three other inventors, did perfect a cash register that did not infringe the plaintiff's patents, and applications for patents were made and that in anticipation of the manufacture of that cash register the defendant expended approximately $1,500,000 in a plant and machinery.

The original contract of employment between the inventor and the plaintiff having been drawn by the plaintiff must be construed strictly against it, and as thus construed the restrictive covenant contained therein terminated at the end of the year for which the inventor was employed and it was not binding on him thereafter, since he did not desire to leave the employ of the plaintiff and did not leave its employ — two conditions precedent necessary to make the covenant applicable.

Under the subsequent contract signed by the inventor his employment became one at will, and he could leave at any time or be discharged at any time without liability on the part of either the plaintiff or him.

This action is in effect one for specific performance and it cannot be maintained against the defendant to compel it to perform a contract executed by the inventor, for the defendant was not a party to that contract.

Furthermore, it would be unjust and inequitable to compel the defendant, who acted with the utmost good faith in hiring the inventor and taking an assignment of the inventions covering the cash register that did not conflict with any of the patents held by the plaintiff, after an expenditure of nearly $1,500,000, to assign to the plaintiff the inventions for which it paid $150,000, and, therefore, specific performance being in the sound discretion of the court, the decree in favor of the plaintiff will be reversed and the complaint dismissed.

MCAVOY and BURR, JJ., dissent.

APPEAL by the defendant, Remington Arms Company, Inc., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 9th day of February, 1924, upon the decision of the court rendered after a trial at the New York Special Term.

*Shearman & Sterling* [*John A. Garver* of counsel; *Drury W. Cooper, Frank M. Patterson, George Ramsey* and *Chauncey B. Garver* with with him on the brief], for the appellant.

*Sullivan & Cromwell* [*Edward H. Green* of counsel; *De Lano Andrews* with him on the brief], for the respondent.

MERRELL, J.:

This action was brought in equity to compel the defendant to assign and transfer to the plaintiff all its right, title and interest in and to two inventions assigned by one Frederick L. Fuller to the said defendant, and to establish plaintiff's right thereto. The plaintiff based its demand for such assignment upon the claim that such inventions were the property of said plaintiff by virtue of a contract entered into between the plaintiff and said Fuller whereby the plaintiff claims Fuller agreed to assign said patents to it. Fuller was not made a party defendant in the action, but the action was brought against the defendant upon the theory that its predecessor, the Remington-Arms Union Metallic Cartridge Company, whose obligations said defendant had assumed, had employed Fuller with full knowledge that such employment was a violation of the terms of said agreement theretofore entered into between the plaintiff and said Fuller, and that, therefore, the defendant became chargeable with the performance of the latter's agreements.

On February 17, 1909, Fuller, then a resident of Trenton in the State of New Jersey, entered into a contract in writing with the plaintiff, by the terms of which the plaintiff employed Fuller in the capacity of an inventor " for a period of one year commencing the 15th day of March, 1909." The term of Fuller's employment was stated in the contract clearly and without ambiguity, and under its provisions his term of employment thereunder expired on the 14th day of March, 1910. By the terms of the agreement Fuller was to enter the employment of the plaintiff on said 15th day of March, 1909, and agreed to devote his entire time and attention in the interests of the plaintiff, while the contract was in effect, to inventing and carrying out experimental work as directed by the plaintiff. Therefor he was to receive a salary from the cash register company of $5,000 for said period, payable in monthly installments of $416.67. It was further recited in the contract that since said Fuller while in the employ of said company would be in a position to be intrusted by said company with information regarding many of its mechanical devices, the demands of the future looking to the possible betterment of all of their contrivances and mechanisms incidental to their business, and

other confidential information relating to inventions and the development of the cash register business, Fuller agreed in part consideration of the wages or salary then or thereafter to be paid to him by said company, that he would transfer, assign and deliver to said company, its successors and assigns, the entire right, title and interest in and to all inventions and patents relating to cash registers, or registering or recording machines, or any sort of mechanisms or devices useful in monetary or accounting transactions, or processes or mechanisms peculiarly useful in the manufacture of the above-enumerated devices, which said Fuller, *during the said term* of his employment by said company might make or conceive or might acquire, or might assist in making or conceiving or might complete after having possibly conceived previous to his employment by said company, except as to two contrivances expressly excepted from the terms of the contract. Said Fuller also agreed that upon the preparation of any application for a patent upon any one of such devices, he would execute an assignment thereof in the same form or to the same effect as the form of assignment attached to the contract, the terms and provisions of which, by reference, were incorporated as part of the contract itself. With the exception of the two contrivances mentioned in the contract, Fuller further agreed that he was not at that time the owner of any inventions, machines or mechanisms relating to cash registers or registering or recording machines of any sort other than those which he had explained to the plaintiff. It was further provided in the contract that in view of the facts thereinbefore set forth as to the position of trust to be held by said Fuller and the acquisition by him of vital and confidential information regarding the development of the company's devices and the demands of the future, and since it would be manifestly unfair to take advantage of such information to the detriment of the National Cash Register Company after the termination of his active employment by said company, if " *at the end of this contract,* he does not wish to longer continue in the employ of said National Company *and leaves said National Company,* and said National Company being still willing to employ said Fuller at a salary equal to that he is then receiving, then, in this event, he will not, for a period of one year immediately following the cessation of his employment and the severance of his connection with the National Company, enter the services of any other cash register company, as inventor, or be in any way directly or indirectly associated with any such company during such period of one year, and he also agrees to assign and transfer to said National Company any invention in cash registers, recorders or similar mechanisms which he may make during such period

of one year following such termination of employment, by executing an assignment in the form of or to the same effect as the attached assignment; and he further agrees that during such period of one year he will, whenever requested by said National Company and whenever reasonable within his power, give to said National Company the benefit of his advice and opinions regarding any of the devices upon which he has worked or kindred thereto, and also his advice and opinion, as a mechanical expert, upon cash register matters, upon being paid therefor by said National Company at a rate exactly corresponding to his rate which was in force at the time of termination of his contract and active employment by said National Company."

The contract further provided as follows: " Said National Company agrees that in the event of its terminating the employment of said Fuller at the end of the period of one year covered by said contract, then, in such event, said Fuller will be free immediately to enter the services of any other cash register company, as inventor, or in any other connection."

The contract then excepted an adding or listing machine which Fuller had already completed and for the sale of which he had been negotiating with others, it being agreed that he would do no further work upon said adding machine, but endeavor to dispose of the same at the earliest possible moment and sever all connection therewith. There was also excepted from the contract a certain cash register upon which Fuller had been working during the preceding year and upon which he had expended some $3,000 in its development, and for which he had applied for letters patent to the United States Patent Office; and the plaintiff was given an option to purchase such machine if it desired. By the terms of the contract Fuller also agreed that he would upon demand at any time from said plaintiff furnish full information with regard to any inventions which he may have made or which may have been worked out under his direction during the term of his employment with said National Cash Register Company. The contract admittedly was prepared by the plaintiff and was designed to safeguard the plaintiff's interests in all particulars. This contract was not renewed at the end of the year, and by its terms expired on March 14, 1910. Nevertheless, Fuller continued in the employment of the plaintiff until September 1, 1917, at varying rates of compensation. Shortly after the expiration of the term of employment under said contract Fuller approached plaintiff's patent attorney, who was the one in charge of his department, and applied for a renewal of the contract of March 15, 1909, and asked the attorney what the company was going to do about it.

Plaintiff's attorney in reply asked Fuller what he wanted them to do, and the latter replied that he wanted a renewal of the 1909 contract or another time contract; and the attorney replied that that the company would not do, as it was against their policy to give time contracts. Fuller testified that he then said: " In that case, as I understand it, I am free to leave the company at any time I please ·and go where I please and the company is at liberty to discharge me at any time; in other words, I am working by the month," and that the attorney stated that that was his understanding. The attorney came to Fuller shortly thereafter with another agreement which he asked Fuller to sign, telling him that it was a general form of contract which all the plaintiff's inventors signed while in their employ. Muzzy, plaintiff's attorney, denied having such conversation with Fuller, but admitted that Fuller asked him for a term contract and that it was his understanding that Fuller was then employed at will and he could leave and the plaintiff could discharge him at any time. Muzzy also testified that he told Fuller that the company would not give him a definite term of employment.

The second contract which was presented to Fuller for his signature and which the attorney told him was of a general form executed by all of the plaintiff's inventors while in plaintiff's employ, was executed May 24, 1910, and in somewhat condensed form was a repetition of the provisions of the former contract with reference to Fuller's agreement, while employed by plaintiff, to assign to his employer all his right, title and interest in and to all inventions or patents relating to cash registers or machines designed for the purpose of accounting or for monetary transactions or mechanisms for use in such cash registers or machines and all processes and tools, excepting said adding machine which was expressly reserved and which Fuller had not as yet disposed of. In the second contract no period of employment was specified and there was no restrictive provision upon Fuller after he should leave plaintiff's employ.

On August 17, 1917, Fuller entered the employ of the Remington-Arms Union Metallic Cartridge Co., Inc., defendant's predecessor, for a two-year term at an annual salary of $11,000, Fuller being employed by the Remington Company as an inventor in its cash register department. Concurrently with executing the contract with Fuller the Remington Company entered into an independent contract in writing with Fuller and three other inventors by the names of W. E. Best, W. H. Fryer and J. Q. Finfrock, by the terms of which the Remington Company agreed to pay Fuller and his three co-inventors, upon completion of the tool model of a new cash register that should not infringe any existing

patents, the sum of $150,000. Pursuant to such contract of employment Fuller entered upon his duties with the Remington Company on September 24, 1917, having left the plaintiff on September 1, 1917. In June, 1918, the tool model of a new cash register was completed and the $150,000 was paid by the Remington Company to Fuller and his three colleagues. The cash register which they had produced was entirely different from anything invented by Fuller while employed by the plaintiff. Fuller applied for two patents covering the new machine, and these applications, under his agreement with the Remington Company, he assigned to it. The applications were pending at the time of the commencement of the present action which was brought to compel the assignment of said patents and applications to the plaintiff, the plaintiff claiming to be entitled thereto under and by virtue of the provisions of its contract with Fuller of March 15, 1909. The plaintiff contends that defendant was familiar with the provisions of the two contracts between the plaintiff and Fuller at the time of hiring Fuller, and was chargeable with knowledge that in 1917 when Fuller left plaintiff's employment he was forbidden for a year thereafter to enter the service of any one engaged in a similar business, and under the terms of his contract was obligated to assign to the plaintiff any inventions of cash registers made within a year after leaving plaintiff's employment, and also any inventions whenever made which depended for utility on inventions made while employed by the plaintiff. Plaintiff contended upon the trial that the two inventions which Fuller assigned to the defendant were dependent for utility upon inventions made while Fuller was in the employ of the plaintiff. The trial court decided against this contention of the plaintiff, specifically finding that the patent applications in suit embodied no inventions depending for utility on inventions made by Fuller while in the employment of the plaintiff. The court, however, found that the defendant was chargeable with knowledge of the one-year restrictive provision in the contract, and that the same was in force at the time Fuller left the plaintiff's employment in 1917. The court held that the restrictive clause in the contract was not confined to the period of one year following the original term of Fuller's employment by the National Cash Register Company, but that it continued for one year after Fuller left plaintiff's employment on September 1, 1917. The assignment of the two patents to the Remington Company was made in the summer of 1918, and prior to the expiration of one year from the time Fuller actually left the service of the plaintiff.

Interpreting the contract as restricting Fuller for one year after

350  NATIONAL CASH REGISTER CO. *v.* REMINGTON ARMS CO., INC.

First Department, March, 1925.                    [Vol. 212

leaving plaintiff's employment, and finding that the defendant has knowledge of the terms of Fuller's employment with the plaintiff, the court below directed the defendant to assign and deliver to plaintiff the two applications for patents for the new cash register, and all records, models and drawings relating thereto. The principal question, therefore, before this court upon this appeal is as to whether the one-year restrictive provision was in force in 1917, and if so, whether the defendant was chargeable with such knowledge of the fact as to have made it inequitable to employ Fuller and to obtain and retain the fruits of his labors during the year after he left plaintiff's employment. The result of the decree entered upon the decision of the court at Special Term was most drastic in its results so far as the defendant was concerned. It appeared from the evidence that the defendant, which had been actively engaged during the war in manufacturing munitions, and which had been compelled to and had erected in such work expensive buildings and a plant, was casting about in anticipation of the end of the war for some use for the expensive buildings which it had erected and for such machinery as might be used for other purposes. It was finally decided that the Remington Company would engage at its Ilion plant in the manufacture of cutlery and cash registers, and that thereby it would utilize to some extent the expensive buildings which it had erected during the war.

The evidence showed that prior to the commencement of the present action the defendant in connection with the invention and development of its cash register business had expended the sum of $1,300,000. This sum was in addition to the cost of the buildings housing said business. As the result of the decree of the court below, this great expenditure has been lost to the Remington Arms and the fruits thereof have been awarded to the plaintiff. The question, therefore, presented is one of considerable financial importance to the parties.

I am of the opinion that a fair interpretation of the written contracts between the plaintiff and Fuller did not justify the decision of the trial court nor support the conclusion that the plaintiff is entitled to an assignment of the two patents held by the defendant. I am of the opinion that the contract of March 15, 1909, came to an end on the 14th day of March, 1910, and that the restrictive covenant therein contained was not in force or effect after the expiration of the term of said contract, and that in any event the contract would not be enforcible against the defendant who was not a party to it and who had no reasonable ground for supposing that Fuller was bound thereby at the time

it employed him. Plaintiff in its complaint, in effect, demands that the defendant specifically perform the contract which the plaintiff had with Fuller, and this upon the theory that the defendant illegally employed Fuller with full knowledge of his obligations to the plaintiff. Specific performance is always in the sound discretion of the court. The contract to justify a decree of specific performance should be clearly proved and unambiguous in its terms, and if doubt exists as to whether a party to such contract should be required to specifically perform its terms such doubt should be resolved against the party asking performance. (Pom. Eq. Juris. [4th ed.] §§ 1405, 2186–2190, 2201; *Dalzell* v. *Dueber Mfg. Co.*, 149 U. S. 315.) In the case last cited the action was to compel the assignment of patents on the inventions of the defendant while in the plaintiff's employ. The United States Supreme Court held (at p. 326) that the complaint should have been dismissed because the contract had not been " so clearly and satisfactorily proved as to justify a decree for specific performance." There was a conflict between the testimony of the plaintiff and of the defendant, and while there was much to discredit the defendant's testimony, the United States Supreme Court said, Mr. Justice GRAY writing (at pp. 324, 325): " There is much evidence in the record, which tends to contradict Dalzell in matters aside from the interviews between him and Dueber, and to impeach Dalzell's credibility as a witness. But impeaching Dalzell does not prove that Dueber's testimony can be relied on. * * *. The Circuit Court, in its opinion, after alluding to various matters tending to throw discredit on the testimony of each of the principal witnesses, said, ' The case is one in which different minds may well reach a contrary opinion of the merits ' [*Dueber Watch-Case Mfg. Co.* v. *Dalzell*, 38 Fed. Rep. 599]. We concur in that view; and it affords of itself a strong reason why the specific performance prayed for should not be decreed."

And even though the contract provisions be clear, specific performance will not be decreed if the result will be harsh and inequitable. (Pom. Eq. Juris. [4th ed.] §§ 1713, 2107, 2108, 2216.) In the case at bar the equitable principles above alluded to should be applied with the greatest strictness as the plaintiff seeks to enforce the alleged contract against the defendant who was not a party to it, and who should only be held chargeable in equity under its plain and unmistakable provisions, and in the absence of undue hardship to the defendant.

I am of the opinion that under the express terms of the contract of March 15, 1909, the employment of Fuller by the plaintiff was for no longer period than one year, and that at the expiration

352 NATIONAL CASH REGISTER CO. *v.* REMINGTON ARMS CO., INC.

First Department, March, 1925. [Vol. 212

of said year said contract no longer operated. At the outset of the contract Fuller agreed to enter the employment of the plaintiff on the 15th day of March, 1909, and to devote his entire time and attention to the plaintiff's business " while this contract is in effect," which was " for a period of one year, commencing the 15th day of March, 1909." Fuller was to be paid a salary of $5,000 " during the aforesaid period." Can there be any question but what his term of employment under the contract ended at the expiration of one year? I think not. The term of his employment was one year, and where throughout the contract reference is made to the term of his " employment " it must be taken to refer to the term of his employment specifically stated at the outset of the contract to be for the period of one year. The provision of the contract wherein Fuller agreed that if " at the end of this contract," he did not wish to longer continue in the employ of the National Company and left said company, and said company being still willing to employ him, that then in such event he would not for the period of one year immediately following the cessation of his employment and the severance of his connection with the National Company enter the service of any other cash register company as an inventor, must be taken, it seems to me, to mean one year immediately following the cessation of his employment under the contract, which by its terms ended March 14, 1910. The evidence with reference to Fuller's attempt to obtain a renewal of the contract of March 15, 1909, and of plaintiff's refusal to grant a new term contract amply supports the view which I entertain as to the proper interpretation of the original contract. Plaintiff's attorney admitted and testified that his understanding was that when Fuller approached him asking for a new contract he was then employed at will and could leave when he wished or be discharged at any time by the plaintiff. The second contract which Fuller was asked to sign and did execute on May 24, 1910, clearly evidences an understanding on the part of the plaintiff that the original contract was at an end and that his term of employment thereunder had ceased. The contract of May 24, 1910, was in its essential terms an abbreviation of the original contract with the exception that it contained no restriction whatever upon Fuller with reference to his acts or responsibility after leaving plaintiff's employ, except as to inventions made while in such employ or dependent thereon. The evidence was to the effect that the second contract was one in general use among inventors employed by the plaintiff where no time contract was entered into.

That both of these agreements were prepared by counsel for the plaintiff seems reasonably to be inferred for the reason that

they were admittedly drawn to sedulously protect the rights of the plaintiff. Under well-settled principles of law such contracts are to be construed in favor of the party thereto who was not responsible for the preparation of the contract. (*Marshall* v. *Sackett & Wilhelms Co.,* 166 App. Div. 141, 144; *Industrial & General Trust, Ltd.,* v. *Tod,* 180 N. Y. 215, 225; 2 Williston Cont. § 621.) Under the evidence Fuller was willing to continue in the employ of the plaintiff and to renew his contract at the termination thereof, to wit, on March 15, 1910, but the plaintiff was unwilling to renew the same. The one-year restriction was in no event to apply if the company terminated the employment at the end of the year. The contract provides that " if at the end of this contract [to wit, on March 14, 1910] he [Fuller] does not wish to longer continue in the employ of said National Company and leaves said National Company, and said National Company being still willing to employ said Fuller at a salary equal to that he is then receiving, then, in this event, he will not, for a period of one year immediately following the cessation of his employment and the severance of his connection with the National Company, enter the services of any other cash register company, as inventor, or be in any way directly or indirectly associated with any such company *during such period of one year * * *.*" The language of the contract thus used must, it seems to me, be taken to mean that Fuller would not for the period of one year immediately following the term for which he was employed enter the service of a rival company. The learned court below held that after the expiration of the term of one year provided by the original contract Fuller continued in the employ of the cash register company upon a hiring from month to month. It seems to me rather that the evidence shows the continuance of Fuller in the plaintiff's employ *at will* and that under the evidence he was at liberty to leave at any time, or could have been discharged by the plaintiff at any time the latter saw fit. A general or indefinite hiring is a hiring at will, subject to be terminated at any time by either party without notice to the other. (*Martin* v. *N. Y. Life Ins. Co.,* 148 N. Y. 117; *Watson* v. *Gugino,* 204 id. 535.) In the course of the opinion in the case last cited the Court of Appeals, Judge Vann writing (at p. 541), said: " In this State the rule is settled that unless a definite period of service is specified in the contract, the hiring is at will and the master has the right to discharge and the servant to leave at any time."

Plaintiff must sustain the judgment herein upon the provisions of the contract which it had with its employee, Fuller, strictly

23

**354** National Cash Register Co. *v.* Remington Arms Co., Inc.

First Department, March, 1925. [Vol. 212

construed. (*Marshall* v. *Sackett & Wilhelms Co.*, *supra;* 2 Williston Cont. § 621; *Industrial & General Trust, Ltd.*, v. *Tod*, *supra*.) The restrictive provision of the contract, hereinbefore quoted, forbidding Fuller for one year from entering the employment of any other cash register company and requiring him to assign to the National Cash Register Company the fruits of his inventive work during the year following his employment by plaintiff, in order to make such provision enforcible, was dependent upon two express conditions: [*First*]. "At the end of this contract he does not wish to longer continue in the employ of said National Company; and [*second*] leaves said National Company." Both were conditions precedent to restricting Fuller's activities. Neither of said conditions occurred. On the contrary, at the end of the contract period Fuller desired to continue in the employ of the National Company, and he did not leave said company. He continued with the company under a new and indefinite hiring. It thus appears that neither of the conditions precedent upon the happening of which plaintiff could enforce the restrictive provisions of the contract ever occurred. The contract was prepared by plaintiff and was for its protection in this respect, and its provisions must be most strictly construed against the plaintiff. Unless it clearly appears that the conditions imposed by the contract giving birth to plaintiff's right to restrict Fuller's future employment and to demand the fruits of his labors after leaving its employ occurred, plaintiff should not be permitted to enforce such provisions.

At the expiration of Fuller's term of employment under the contract on March 14, 1910, he continued with plaintiff without anything being said as to the terms of his employment until the latter part of March or early in April, 1910, when the talk was had with plaintiff's attorney and representative, Muzzy, with reference to the granting of a new term contract. A new contract was denied Fuller and he was relegated to a continuance of his employment at the will of his employer and only obligated himself to turn over the fruits of his inventions during the term of his employment in the manner provided in the second contract executed May 24, 1910. I am unable to construe the contract of May twenty-fourth in any other light than as superseding the contract of the year before. It was more than a mere perfunctory document which the plaintiff required all of its inventor employees to sign. It expressly excepted the adding machine which Fuller retained. The contract of May 24, 1910, which Fuller executed was but a condensed form of all of the material protective provisions of the original contract with the sole exception of the provision restricting Fuller for the period of one year from the termination of his employ-

ment.  In the second contract the parties recognized that in view of the nature of Fuller's connection with the plaintiff it would be unjust for him to take personal advantage of any information which he might acquire while in the plaintiff's employment.  For that reason he agreed to assign to the cash register company all inventions which he might make or assist in making while employed by the plaintiff.  The effect of this provision is no different from that contained in the first contract.  In the second contract he also agreed to assign any invention at any time subsequently made which should depend for utility upon those made during his employment or which he had assisted in making.  A similar provision is found in the original contract.  Fuller also covenants in the second contract that he had made no previous inventions save those disclosed to his principal.  Similar provisions are found in the first contract.  Fuller also agreed in the second contract to execute all necessary papers in connection with obtaining patents as he had agreed in the original contract.  Still further supporting the proposition that the parties intended by the second contract to supersede the first is the treatment of the exception of the adding machine contained in the original contract.  In the second contract the cash register was omitted because, under the original contract, Fuller had bound himself to dispose of it within ninety days, in case the cash register company did not choose to take it for $3,000.  In the contract of May 24, 1910, the adding machine is referred to and excepted as having been conditionally sold, but which might revert to Fuller.

It further appeared from the evidence that employees of the invention department of the plaintiff were not at that time given time contracts.  They were all employed at will and this was the reason given Fuller why plaintiff refused to make any exception in his case.  Upon the trial the plaintiff proved that all its other inventor employees were required to sign contracts similar in form to that executed by Fuller on May 24, 1910, but none of such contracts restricted the employee's freedom after his employment had terminated.  No reason was suggested upon the trial why Fuller should have been restricted more than the 125 of his fellow-employees in the same department.  Had it been the understanding of the plaintiff that the original contract remained in force, why the necessity of embodying in the second contract essential provisions contained in the first?  Finally, what was the necessity of the contract of May 24, 1910, if the first contract remained in force?  It certainly contained no additional provisions to those contained in the first contract.  Muzzy, plaintiff's attorney, to whom Fuller applied for a renewal of his term contract in April,

1910, testified: "Mr. Fuller came to me as his supervisor and asked me for a term contract. He wanted something definite to go on. I told him I had not the authority to give it to him, but I would take it up with the executive officers and let him know." And later: " I told Mr. Fuller that I had taken the matter up with Mr. Deeds [a vice-president] and that the company would not give him a definite term of employment."

And the court in that connection inquired: " That was your understanding, wasn't it? He was employed at will, and he could leave and you could discharge him? (The Witness): Yes."

The foregoing quotations from the testimony of plaintiff's man Muzzy would seem to effectively contradict the conclusion of the court that the hiring of the plaintiff after March 14, 1910, was from month to month. A hiring from month to month would be a time employment and differs radically from an employment at will. Fuller's testimony upon the trial clearly showed that he entered into the original written contract for the term of one year and, with two unimportant exceptions, gave up to the plaintiff the fruits of his life work as an inventor. He entered plaintiff's employment undoubtedly hoping that he would continue therein. At the end of a year he was informed that the plaintiff would not renew his contract and would not hire him for any particular period. His position thereafter became a hazardous one. He was subject to discharge at any time without notice, and it is unreasonable to believe that he intended or that the plaintiff believed that it was exacting from him a promise to do that which would deprive him of a living for at least a year in the only employment which he understood or at which he could earn a living.

I think the testimony clearly demonstrates that the defendant throughout acted in the utmost good faith. It is difficult to conceive that an individual or a corporation with the slightest business perspicacity would enter into the contract which the defendant did with Fuller; would expend $1,300,000; would pay Fuller and his three coinventors $150,000 in cash for the model of a cash register which would not infringe existing patents, without believing that it had a legal right to incur such expenditures. Had the defendant entertained the slightest doubts of its right to deal with Fuller and to purchase of him and his colleagues the patent cash register which they were inventing, the transactions could easily have been delayed three months, when the term for which the plaintiff claims Fuller was restricted would have expired, and even under the interpretation which the plaintiff puts upon the contract, there would have been no objection to his turning over to the defendant the newly-contrived machine.

Another consideration of some importance is the fact that the cash register, the patents of which the decree has provided shall be assigned to the plaintiff, was the result of the efforts, not alone of Fuller, but of Fuller and three others who were associated with him in the invention, and none of whom does the plaintiff claim was in anywise restricted. While Fuller made the formal application for the letters-patent, the evidence fairly shows that the new machine was the result of the combined efforts of the four inventors, of whom Fuller was one. The bonus of $150,000 was paid to the four men with whom the defendant had contracted therefor.

The defendant apparently acted in the utmost good faith in employing Fuller and in entering the field of cash register manufacture. Indeed, the learned justice presiding at the trial, after the close of the plaintiff's case openly expressed the opinion that no evidence had been presented attributing any sinister motive to the defendant or which would impugn the good faith of the Remington Company. The plaintiff suffered no injury whatever by reason of the newly-invented cash register. It did not infringe upon any patents held by the plaintiff, and yet the decree appealed from awarded to the plaintiff, without the payment to defendant of a dollar, the entire fruits of defendant's expenditure of nearly $1,500,000, a most inequitable result. The most that the restriction in the contract could reasonably have been intended to secure to the plaintiff was the right to hold the fruits of its employee's inventive genius while in its employ, or thereafter, for the period of one year, the right in and to any inventions which depended for utility upon inventions made by the employee while in plaintiff's employ. The proofs established and the court has held that the inventions which defendant is directed to turn over to plaintiff were not invented while Fuller was in the employ of plaintiff, and that they do not depend for utility upon any invention made by him during such employment. In the face of such a finding, the conclusion of the trial court in turning over such invention to plaintiff seems to us most inequitable and unjust.

I am of the opinion that the decree of the learned court below is a harsh, inequitable and unjust one, and that the same is unsupported by the evidence in the case or by legal or equitable principles applicable thereto. The judgment appealed from should be reversed, with costs, and plaintiff's complaint dismissed, with costs.

DOWLING and MARTIN, JJ., concur; McAVOY and BURR, JJ., dissent.

McAVOY, J. (dissenting):

The period during which plaintiff's former employee was to transfer his title to inventions made by him was obviously to extend for a year after the termination of his employment, and was not, in view of the nature of his relation to his employer, to continue merely during the original term of the contract. The intent to restrain his transfer of inventions to others of products similar to plaintiff's is inherent in the nature of his agreement, and its extension for one year after cessation of employment is not unreasonable nor conditional upon any contingency indicated in any of the memorials embodying the terms of his engagement.

I, therefore, dissent.

Judgment reversed, with costs, and complaint dismissed, with costs. Settle order on notice.