Nicholas M. Pette, J.
Plaintiffs seek a declaratory judgment with respect to the ownership of a patent pertaining to an improvement upon the closure of cans.
The pertinent facts are as follows: (a) the defendant was employed in and about September, 1947 to manage the Melvina Can Company on a part-time basis; (b) Melvina Can Company was in the business of manufacturing cans for the storage of fuses for the armed forces; (c) the defendant had been previous to his employment engaged in the business of free-lance buying and selling of second-hand machinery and was instrumental in obtaining United States Government contracts for the Melvina Can Company; (d) the United States Ordnance Bureau requested an improved type of can in the nature of a “ reusable can ” instead .of the “stripped” can heretofore purchased; (e) the defendant on his own initiative developed and conceived the idea of the “ reusable ” can which was to be acceptable by the United States Government; (f) the defendant ordered the professional drawings and dies for which the Melvina Can Company paid and also installed machinery in its plant for the production of these “ reusable ” cans; (g) in and about July, 1950 defendant applied for a patent on his idea and letters patent were finally granted on July 8, 1952; (h) subsequent disputes arose between the defendant and Cahill or Roberts with reference to the disposition of some second-hand machinery and as to the disposition of the profits in connection therewith; (i) in earlier litigation between the defendant and Cahill et al. pertaining to this machinery a settlement was reached and general releases exchanged on or about April 11, 1951 (the patent was granted to the defendant on July 8, 1952 and this action was commenced in and about November, 1953).
The primary issue involved is in reference to the ownership of the patent; the alleged ‘‘ shop-rights ’’ of Melvina Can Company and the effect of the general release (supra).
An analysis of the testimony elicited upon the trial and the evidence submitted by the respective parties, clearly establishes the fact that the defendant, Regan, was not employed by plaintiffs as an inventor or professional engineer, but solely in the capacity of manager or superintendent of a factory. He could and did perform the duties of his employment in the nature of management for which he was hired and paid, and should not be penalized for designing a patentable improvement on a “ reusable ” can which materially benefited plaintiff-employer, *457 nor is his invention the property of plaintiffs solely because he was in the general employ of Roberts when he made the invention.
The prevailing law is stated in the leading case of United States v. Dubilier Condenser Corp. (289 U. S. 178) wherein the Supreme Court of the United States held in part, as follows (p. 187): “ if the employment be general, albeit it cover a field of labor and effort in the performance of which the employee conceived the invention for which he obtained a patent, the contract is not so broadly construed as to require an assignment of the patent” and further held on page 188: “ employment merely to design or to construct or to devise methods of manufacture is not the same as employment to invent ’’.
The same court held, in the earlier case of Dalzell v. Dueber Mfg. Co. (149 U. S. 315) at page 320, as follows: “ But a manufacturing corporation, which has employed a skilled workman, for a stated compensation, to take charge of its works, and to devote his time and services to devising and making improvements in articles there manufactured, is not entitled to a conveyance of patents obtained for inventions made by him while so employed, in the absence of express agreement to that effect ”.
Reference is also made to the case of General Time Corp. v. Padua Alarm Systems (199 F. 2d 351) wherein the court held at page 355: ‘‘ For an inventor’s ideas are his own, unless he disposes of them by agreement * * * He is not bound to yield up his invention by the mere fact of employment — even though it may have continued, as it did not here, until invention was achieved.”
The general rule is that in the absence of an express agreement by an employee to give his employer the benefit of the employee’s inventive genius, the employer has no interest in the patents issued to said employee, even though it can be said that his inventive power was stimulated by knowledge necessarily derived from his employment. (39 C. J., Master and Servant, p. 128, § 167; Salterini v. Schneider, 45 N. Y. S. 2d 645; McNamara v. Powell, 168 Misc. 806, mod. 256 App. Div. 554; Talbot v. Harrison, 150 Misc. 798, affd. 240 App. Div. 957.)
The court has taken due cognizance of the fact that the complaint herein has not alleged a claim of ‘‘ shop-right ’’; and therefore no such relief can be given to the plaintiff.
The factual situation presented herein and the legal principles applicable thereto are materially different and distinguishable from those presented in Marshall v. Colgate-PalmolivePeet Co. (175 F. 2d 215, which affd. 76 F. Supp. 378), inasmuch *458 as the employee inventor’s special talents for the specific subject of the employment relationship were contemplated as a condition of the hiring. Likewise in the case of Houghton v. United States (23 F. 2d 386) the employee was a trained chemist who was hired for the specific purpose of conducting experiments and made a discovery or invention while employed in such operation. Under these circumstances, substantially different from the facts presented in the instant case, it was held that the employee’s invention was the property of his employer.
After due deliberation, and consideration of all of the evidence, and the testimony and the authorities herein cited, I find in favor of defendant and against the plaintiffs and direct that judgment be entered dismissing the complaint upon the merits.
This constitutes the decision of the court, pursuant to section 440 of the Civil Practice Act.
Settle judgment on notice.