**B. F. GLADDING & CO., Inc., Appellant,**

v.

**SCIENTIFIC ANGLERS, Inc., Appellee.**

**No. 12958.**

United States Court of Appeals
Sixth Circuit.

Oct. 14, 1957.

Theodore E. Simonton, Cazenovia, N. Y., Arthur J. Kinnane, Bay City, Mich., for appellant.

Laurence, Wiest & Sherman, Washington, D. C., F. Norman Higgs, Bay City, Mich., for appellee.

Before SIMONS, Chief Judge; ALBERT LEE STEPHENS, Circuit Judge, Ninth Circuit; and McALLISTER, Circuit Judge.

ALBERT LEE STEPHENS, Circuit Judge.

Appellant B. F. Gladding & Co., Inc., argues in this petition that under applicable New York law, we are incorrect in holding in our earlier opinion[1] that appellee Scientific Anglers, Inc. is entitled to use those trade secrets that constitute *unpatentable* contributions to the "Aerofloat" fishing line. Gladding complains that Scientific has devised an apparatus for making tapered fishing lines which does not infringe the claims of the Variable Die Application and proposes to continue to make and sell its "Air Cel" lines, using this alleged non-infringing apparatus and also using the unpatentable trade secrets obtained in the Bubble Line Application.[2]

▇ We stated and affirmed in our opinion the finding of the trial court that no trade secrets exclusively *belonging* to Gladding were included in the Bubble Line as manufactured in the finished product and that the contract between the parties was designed to cover unpatentable as well as patentable processes and that it was contemplated by the parties that both were to enjoy the fruits of their efforts. The trial court also held that Scientific was not employed to invent and that if Scientific did invent, the contract covered such inventions, and that Scientific was an independent contractor not an "employee" within the patent law understanding of the word "employee."

Gladding relies principally on the case of Standard Parts Co. v. Peck, 264 U.S. 52, 44 S.Ct. 239, 68 L.Ed. 560, in which it was held that one who is employed and paid by another to develop a process and machinery for manufacturing a *specific product,* and who patents an invention made by him in the course of the employment holds the patent for his employer. Gladding also cites the New York case of Salterini v. Schneider, Sup., 45 N.Y.S.2d 645, in which it was held that one employed to make an invention and who succeeds during his term of service in accomplishing that task is bound to assign to his employer any patent obtained. We note that in the instant case we are not dealing with a patent but rather with a trade secret which Gladding admits was developed jointly by Gladding and Scientific. We also note that Scientific was employed by Gladding under Article 2 of the contract "as consulting engineers for Gladding engaged in working on such of the development, engineering, production and marketing problems of Gladding as may from time to time be assigned to Scientific."

Article 10 of the contract between the parties states:

"Any inventions, discoveries and improvements made by Scientific during the term of this agreement and arising out of work done by Scientific for Gladding pursuant to the provisions of Article 2 hereof, shall be promptly disclosed in writing by Scientific to Gladding, and Gladding shall have a non-exclusive, royalty-free license to shop right to make, use and sell the same in connection with its business, such license or shop right to be non-assignable save to the purchaser of substantially all of Gladding's fish line business. Scientific agrees promptly to furnish Gladding with a copy of any patent application filed by it on any inventions, discoveries and im-

1. B. F. Gladding & Co., Inc., v. Scientific Anglers, Inc., 245 F.2d 722.

2. For a discussion of these two applications, see our earlier opinion, B. F. Gladding & Co., Inc., v. Scientific Anglers, Inc., 245 F.2d 722. It is alleged in the instant petition that the Bubble Line Application has been rejected by the Patent Office and the application abandoned. It is also alleged that a license agreement as to the Variable Die Application has been entered into between the parties.

provements thus arising out of its employment by Gladding, and Gladding shall have the first refusal of exclusive rights thereunder, and negotiations to that end shall be conducted in the manner set forth in Article 9 hereof."

Gladding argues that the expression "inventions, discoveries and improvements" when used in both sentences of Article 10 is limited to patentable developments. We do not agree. We are of the opinion that the contract must be construed as a whole, and in particular Article 2 must be read in conjunction with Article 10. We also note and approve the recent New York case of Cahill v. Regan, April 20, 1956, 2 Misc.2d 455, 153 N.Y.S.2d 768, not cited by appellant, which contains an excellent summary of the controlling law on the point which is in accord with the trial court's findings and conclusions which we have previously affirmed. In Cahill v. Regan the court cited with approval United States v. Dubilier Condenser Corp., 289 U.S. 178, 53 S.Ct. 554, 77 L.Ed. 1114 and Dalzell v. Dueber Watch-Case Mfg. Co., 149 U. S. 315, 13 S.Ct. 886, 37 L.Ed. 749, and held in effect that employment to design or to construct or to devise methods of manufacture is not the same as employment to invent and the employer is not entitled to a conveyance of patents on inventions made by an employee while so employed in the absence of an express agreement to that effect.

██ When Article 2 is read in conjunction with Article 10, we are of the opinion that Scientific was not employed to invent and, as stated by the trial judge, it was contemplated by the parties that both were to enjoy the fruits of their efforts. The mere creation of an employer-employee relationship does not *per se* cause any and all inventions, patents or trade secrets to belong to the employer. It must be shown that under the particular employment contract that that which is being claimed by the employer is the precise subject of the contract of employment such as "for solving a defined problem" or to "evolve a process or mechanism for meeting a specific need." In the instant case Article 2 does not create such an employment. Further, Article 10 inferentially limits the language of Article 2. We find without merit the circuitous argument of appellant that Article 2 created a specific employment under which Gladding would own, in their entirety, both the patentable and unpatentable contributions to the "Aerofloat" line development, and therefore Article 10 is in limitation of Gladding's legal rights as an employer and should be strictly construed against Scientific. As we have heretofore said, the employment contract should be first construed as a whole in order to ascertain the general intent of the parties, after which the meaning or scope of specific articles of the contract should be determined in the light of such intent.

The petition for rehearing is denied.